Richard G. EASTLAND, Appellant

v.

S. Stacy EASTLAND, Appellee.

No. 14–07–00581–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 9, 2008.

---

Justin M. Campbell III, Houston, Timothy D. Zeiger, Dallas, A.W. Arnold, III, Kerrville, TX, for appellants.

Joseph S. Horrigan, C. Vance Christopher, Houston, TX, for appellees.

Panel consists of Justices YATES, SEYMORE, and BOYCE.

## OPINION

BOYCE, Justice.

Appellant Richard G. Eastland ("Richard") challenges the appointment of his brother, appellee S. Stacy Eastland ("Stacy"), as successor independent executor of the estate of their father, Seaborn Eastland, Jr. Richard contends the probate court (1) erred by appointing Stacy as successor independent executor without notice in violation of Texas Probate Code § 220(a) (Vernon 2003); and (2) abused its discretion in finding that (a) Stacy was not unsuitable to be appointed successor independent executor, and (b) there was a continued need for administration of the estate. We affirm.

## Background

Seaborn Eastland, Jr. died testate on December 8, 1990. Under the terms of his will, an independent administration of his estate was required. Accordingly, Mr. Eastland named his wife, Anne Eastland, as independent executrix. He also named Stacy as successor independent executor should Anne Eastland "for any reason fail [ ] or cease[ ] to serve as such."

Anne Eastland duly qualified as independent executrix of the estate, and letters testamentary were issued to her on December 26, 1990. She served as independent executrix of the estate until her death on January 20, 2005.

Pursuant to a provision in Seaborn Eastland, Jr.'s will, Richard owned majority voting control of Camp Mystic, Inc. ("Camp Mystic"). The remainder of Camp Mystic's stock was bequeathed to Stacy, his sister, his mother, and other Eastland family members either outright or through various trusts. Camp Mystic was reorganized in 1998 to address potential liability from its operation of a private summer camp. The reorganization created two separate corporations: the "new" Camp Mystic corporation, and Natural Fountains Properties, Inc. ("Natural Fountains").

Natural Fountains is owned by the same individuals and trusts that continued ownership of the "new" Camp Mystic corporation. Richard is the majority shareholder and president of Natural Fountains, and one of its directors. Stacy is a director and minority shareholder of Natural Fountains.

By virtue of the 1998 reorganization, Natural Fountains owns more than 700 acres in Kerr County. In turn, Natural Fountains leases this acreage to Camp Mystic for operation of its summer camp. The lease agreement between Camp Mystic and Natural Fountains provides that rent will be set annually by Natural Fountains' board of directors. From 1998 through 2006, Camp Mystic's rent was set by unanimous vote.

On November 14, 2006, Stacy filed suit individually and as a trustee against Richard individually and as a trustee in Harris County Probate Court No. 2 seeking declaratory relief "relating to certain trusts created under the Last Will and Testament of Seaborn Eastland, Jr." Notice and a copy of that pleading were served on Richard in January 2007.

On March 20, 2007, Richard sued Stacy and others in Kerr County District Court seeking a declaration of the rights, status, and legal relations of Camp Mystic and Richard pursuant to the lease between Camp Mystic and Natural Fountains. Richard sought a declaration that Camp Mystic had fully or substantially performed its contractual obligations to Natural Fountains, including payment of rent in full from 1998 to 2006. In his petition, Richard also asserted that Stacy asked Richard, in Richard's capacity as president of Natural Fountains, to declare Camp Mystic in default due to alleged underpayment of rent.

On April 3, 2007, Stacy filed his application for appointment as successor independent executor of Seaborn Eastland, Jr.'s estate in Harris County Probate Court No. 2. No citation or notice to interested persons was given.

On April 4, 2007, Stacy filed suit against Richard in Harris County Probate Court No. 2 complaining of alleged breaches of trust and fiduciary duty, including allegations that Richard failed to notify Natural Fountains' board of directors of offers to purchase some or all of Natural Fountains' land. Stacy asserted the claims in a number of capacities, including as the "named successor Independent Executor of the Estate of Seaborn Eastland, Jr."

On April 11, 2007, the probate court signed an order granting Stacy's application for appointment as successor independent executor.

On April 23, 2007, Richard filed a motion for new trial and to vacate the order appointing Stacy as successor independent executor, and an objection to the appointment of Stacy as successor independent executor. The probate court held a hearing on the motion for new trial on June 21, 2007, and heard testimony regarding Stacy's suitability to be appointed successor independent executor and the necessity for continued administration of the estate.

During the June 21 hearing, Richard questioned Stacy regarding his suitability to serve as independent executor and the need for continued administration of the estate of Seaborn Eastland, Jr. Stacy testified that continued administration was required because, after receiving his father's files and records following his mother's death in 2005, he became aware of other property owned or potentially owned by the estate, and claims owing or potentially owing by the estate and to the estate.

Stacy testified at the June 21 hearing that the assets he discovered included a mineral interest his father owned, which previously had been overlooked and never distributed. Stacy testified that he was told in early 2007 that the independent administrator of the estate of one of his father's former law partners planned to file suit against the law firm. That lawsuit was filed in March 2007, and the petition in that lawsuit alleged that there was vicarious liability on the part of the firm's partners during Seaborn Eastland, Jr.'s tenure. Stacy testified that he expected his father's estate to be joined as a party to that lawsuit. Stacy testified that any potential liability of his father's estate in that lawsuit could affect the estate's portion of an income stream from his father's former law firm, subjecting the estate to potential liability for continuing to distribute this income to the beneficiaries of the will. Stacy also testified about potential estate liability based upon an indemnification agreement with another of his father's former law partners stemming from a different lawsuit. Additionally, Stacy testified that his November 14, 2006 suit against Richard sought construction of their father's will.

At the conclusion of this hearing, the probate court signed an order denying Richard's motion for a new trial and motion to vacate the order appointing Stacy as successor independent executor, and overruling Richard's objection to the appointment of Stacy as successor independent executor. The probate court found that Stacy was not unsuitable to be named the successor independent executor of the estate of Seaborn Eastland, Jr., and that necessity existed for continued administration of the estate. Richard now challenges on appeal the probate court's appointment of Stacy as successor independent executor.

## Appellate Jurisdiction

A probate court order determining who may serve as an independent executor is appealable because it "finally adjudicates a substantial right." *See* Tex. Prob. Code Ann. § 5(g) (Vernon Supp.2008); *Logan v. McDaniel*, 21 S.W.3d 683, 688 (Tex. App.-Austin 2000, pet. denied); *Spies v. Milner*, 928 S.W.2d 317, 318–19 (Tex.App.-Fort Worth 1996, no writ); *see also De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex.2006) ("Probate proceedings are an exception to the 'one final judgment' rule; in such cases, 'multiple judgments final for purposes of appeal can be rendered on certain discrete issues.'") (quoting *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 192 (Tex.2001)).

## Standard of Review

This appeal turns in part on the meaning of certain provisions in the Probate Code. Statutory construction is a legal question that we review *de novo*, ascertaining and giving effect to the legislature's intent as expressed by the plain and common meaning of the statute's words. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex.2007).

We review a probate court's finding regarding unsuitability to serve as independent executor for abuse of discretion. *In re Estate of Gaines*, 262 S.W.3d 50, 56–57 (Tex.App.-Houston [14th Dist.] 2008, no pet.). We also review the probate court's determination regarding necessity for administration for a clear abuse of discretion. *King v. Estate of Balshaw*, No. 01–89–00370–CV, 1990 WL 11977, at *3 (Tex. App.-Houston [1st Dist.] Feb. 15, 1990, no writ).

## Analysis

Richard argues that the probate court (1) failed to comply with notice requirements under section 220(a) of the Texas Probate Code when it appointed Stacy as successor independent executor for the estate of Seaborn Eastland, Jr.; and (2) abused its discretion in finding that (a) Stacy was not unsuitable to be appointed successor independent executor, and (b) there was a continued need for administration of the estate. Richard asserts that these findings are not supported by the evidence in this case. We address each contention in turn.

## I. Applicability of Texas Probate Code Section 220(a) to the Appointment of Stacy as Successor Independent Executor

Richard contends that section 220(a) applies to the appointment of Stacy as successor independent executor; requires notice to interested parties, except when immediate appointment is necessary; and was violated when Stacy was appointed without notice to Richard. Stacy contends that notice of his appointment as successor independent executor was not required because section 220(a) applies to a "personal representative" but not to an "independent executor" as those terms are defined by the Texas Probate Code. *See* Tex. Prob.Code Ann. §§ 3(aa), (q) (Vernon Supp.2008).

The probate court held that it was not required to give notice to Richard as outlined in section 220(a) before appointing Stacy as successor independent executor of Seaborn Eastland, Jr.'s estate. The probate court concluded that its April 11, 2007 appointment of Stacy as successor independent executor required only findings that (1) Stacy was named in the will as successor independent executor; and (2) a continuing administration was necessary.

### A. Standards for Statutory Construction

In construing a statute, our primary objective is to determine the legislature's intent, which we discern when possible from the plain meaning of the words chosen. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex.2006).

We may consider other matters in ascertaining legislative intent, including the objective of the law and its history, its title or caption, and law on similar subjects. Tex. Gov't Code Ann. § 311.023 (Vernon 2005). We ordinarily will adopt and uphold a construction placed upon a statute by those charged with the duty of its enforcement, including courts, if the statute is uncertain and the construction so given it is reasonable, especially where such construction has been sanctioned by long acquiescence. *Chapa v. Spivey*, 999 S.W.2d 833, 835 (Tex. App.-Tyler 1999, no pet.).

We presume that every word of a statute was used for a purpose, and, likewise, that every omitted word was excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981). We must consider the statute as a whole rather than its isolated provisions. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001).

### B. Role of Independent Executors

Because the parties' disagreement focuses on the interplay between the statutory terms "independent executor" and "personal representative," it is helpful at the outset to examine the role of an independent executor under Texas law.

The Texas Probate Code defines an "independent executor" as "the personal representative of an estate under independent administration as provided in Section 145 of this Code." Tex. Prob.Code Ann. § 3(q). In turn, the Probate Code defines "personal representative" to encompass independent executors and their successors. *Id.* § 3(aa). However, section 3(aa)'s broad definition of "personal representative" contains an important limitation: "The inclusion of independent executors herein shall not be held to subject such representatives to control of the courts in probate matters with respect to settlement of estates except as expressly provided by law." *Id.*

Independent administration traces its origins in Texas law to at least 1873. *See Lewis v. Nichols,* 38 Tex. 54, 54 (1873) ("independent will" need only be probated and does not otherwise bring an estate within the jurisdiction of the probate court). Because of this long history, Texas courts have had numerous opportunities to discuss the purpose behind independent administration.

■ The purpose of section 145—and of independent administration itself—is to free an independent executor from the expense and control of judicial supervision except where the Probate Code specifically

and explicitly provides otherwise. *Corpus Christi Bank & Trust v. Alice Nat'l Bank,* 444 S.W.2d 632, 634–35 (Tex.1969); *Bunting v. Pearson,* 430 S.W.2d 470, 473 (Tex. 1968); *Rowland v. Moore,* 141 Tex. 469, 472, 174 S.W.2d 248, 249–50 (1943); *Nadolney v. Taub,* 116 S.W.3d 273, 283 (Tex. App.-Houston [14th Dist.] 2003, pet. denied); *Sweeney v. Sweeney,* 668 S.W.2d 909, 910 (Tex.App.-Houston [14th Dist.] 1984, no writ); *In re Bateman's Estate,* 528 S.W.2d 86, 89 (Tex.Civ.App.-Tyler 1975, writ ref'd n.r.e.).

■ The primary distinction between an independent administration and a dependent administration is the level of judicial supervision over exercise of the executor's power. Executors in a dependent administration and other personal representatives can perform only a limited number of transactions without seeking a court's permission, such as paying taxes, voting stocks, insuring property, and releasing liens upon full payment. *See* Tex. Prob. Code Ann. § 234(b) (Vernon 2003). Transactions such as the purchase or exchange of property, the compounding of debts due to the estate, or the compromise or settlement of estate claims in dispute or litigation typically require the executor in a dependent administration to submit a written application to the court and receive a court order granting authority to enter into the transaction. *See id.* § 234(a).

Independent executors, in contrast, can enter into any transactions deemed necessary for the good of the estate without requesting court authority after (1) the order appointing the independent executor has been signed by the court; and (2) the inventory, appraisement, and list of claims of the estate has been filed by the independent executor and approved by the court. *See id.* § 145(h) (Vernon 2003). The legislative intent to free independent executors from judicial control is borne out in case

law. *See Corpus Christi Bank & Trust,* 444 S.W.2d at 634–35; *Bunting,* 430 S.W.2d at 473; *Rowland,* 141 Tex. at 472, 174 S.W.2d at 249–50; *Nadolney,* 116 S.W.3d at 283; *Sweeney,* 668 S.W.2d at 910; *In re Bateman's Estate,* 528 S.W.2d at 89. Thus, in determining whether section 220(a) applies to the appointment of Stacy as successor independent executor, a key factor we must bear in mind is whether such an application would subject an estate that already has spent years under independent administration to additional judicial control.

### C. Does Section 220(a) Apply to Stacy's Appointment?

■ Section 220 of the Texas Probate Code is entitled "Appointment of Successor Representative," and subsection (a) is entitled "Because of Death, Resignation or Removal." Tex. Prob.Code Ann. § 220(a) (Vernon 2003). Subsection (a) reads as follows:

> When a person duly appointed a *personal representative* fails to qualify, or, after qualifying, dies, resigns, or is removed, the court may, upon application appoint a successor if there be necessity therefor, and such appointment may be made prior to the filing of, or action upon, a final accounting. In case of death, the legal representatives of the deceased person shall account for, pay, and deliver to the person or persons legally entitled to receive the same, all the property of every kind belonging to the estate entrusted to his care, at such time and in such manner as the court shall order. *Upon the finding that a necessity for the immediate appointment of a successor representative exists, the court may appoint such successor without citation or notice.*

*Id.* (emphasis added). The probate court made no finding that immediate appointment of Stacy as successor independent executor was necessary. Richard con-

tends that this omission makes Stacy's appointment invalid under section 220(a) because citation and notice were required in the absence of such a finding. Stacy contends that notice and citation were not required because section 220(a) does not apply to his appointment as successor independent executor.

Richard's assertion that section 220(a) requires notice and citation relies on a negative inference. The only reference to citation or notice within section 220(a) is in its last sentence, highlighted above. Richard interprets this sentence to require citation or notice in all circumstances not involving a necessity of immediate appointment. Even assuming that this negative inference is the correct interpretation, Richard's argument fails because section 220(a) does not apply to Stacy's appointment as successor independent executor for reasons discussed below.

We begin with the definition of the term "personal representative" used in section 220(a). This definition potentially encompasses independent executors and their successors. *Id.* § 3(aa). But section 3(aa)'s definition of "personal representative" also features additional limiting language stating that "inclusion of independent executors herein *shall not be held to subject such representatives to control of the courts in probate matters with respect to settlement of estates except as expressly provided by law.*" *Id.* (emphasis added). Thus, the reference to a "personal representative" in section 220(a) does not automatically encompass appointment of a successor independent executor. In light of section 3(aa)'s limiting language, section 220(a)'s reference to a "personal representative" does not apply if (1) application of section 220(a) under these circumstances would subject a successor independent executor to court control in a probate matter with respect to settlement

of an estate; and (2) no provision in section 220(a) or elsewhere includes express language reaching appointment of a successor independent executor.

Richard identifies no pertinent language in section 220(a) or elsewhere in the Probate Code that expressly reaches appointment of a successor independent executor. Therefore, he focuses his analysis on the first prong of section 3(aa)'s limiting language.

As a threshold matter, the parties do not dispute that a probate court asserts at least some degree of "control" when it appoints a successor independent executor. Richard acknowledges in his brief that "[n]othing in Probate Code § 3(aa) removes the necessity that the Court make the appointment in this instance," and that "appointment of a successor executor is not automatic."

Richard nonetheless argues that the appointment of a successor independent executor does not involve probate court control *with respect to settlement of the estate,* thus making section 3(aa)'s limiting language inapplicable to exclude the appointment of a successor independent executor from section 220(a)'s reach. Richard does not define the term "settlement" in his argument. Nor is this term defined in the Probate Code. However, other Probate Code provisions indicate that the limiting language of section 3(aa) does apply here to exclude the appointment of an independent executor from section 220(a)'s reach.

For example, removal of an independent executor under section 222(b) of the Probate Code is control with respect to settlement of an estate. *See Bell v. Still,* 389 S.W.2d 605, 606–07 (Tex.Civ.App.-Waco 1965), *aff'd,* 403 S.W.2d 353 (Tex.1966). *Bell* addressed whether a probate court could remove an independent executor for alleged mismanagement and malfeasance under section 222(b). *Id.* at 605. Section 222(b) authorized probate courts to remove a "personal representative" upon notice for specified causes. *Id.* at 606. *Bell* analyzed whether section 222(b) applied to independent executors under the definition of "personal representative" found in section 3(aa), which contained the same limiting language it does today. *See id.* at 605–06.

In its analysis, the *Bell* court employed two tests to determine whether section 222(b) authorized the probate court to remove an independent executor. *See id.* at 606. First, the court examined whether the Probate Code specifically and explicitly allowed the probate court to take the requested action. *See id.* Second, the court examined whether the action required the probate court to take action "in connection with 'settlement' of the estate" and concluded that it did. *See id.* After noting that section 222(b) did not specifically and explicitly provide for removal of independent executors, *Bell* determined that allowing removal of an independent executor as a "personal representative" under section 222(b) would "authorize accomplishment by obliquity what is prohibited to be done directly." *Id.* at 607. The court determined that "the power to remove is the power to control," and to hold otherwise would contradict the meaning given to the phrase "settlement of estates" by the Texas Supreme Court. *See id.* (citing *Roy v. Whitaker,* 92 Tex. 346, 355–56, 48 S.W. 892, 896–97 (1898), *modified by* 92 Tex. 346, 49 S.W. 367 (1899)). Given *Bell's* conclusion that *removal* of an independent executor is control with respect to settlement of an estate, it follows that *appointment* of a successor independent executor also is control with respect to settlement of an estate.

The case most heavily discussed by both parties is *Baker v. Hammett,* 789 S.W.2d 682 (Tex.App.-Texarkana 1990, no writ),

which also addressed whether section 222 applies to independent executors. *Baker* involved a motion by certain beneficiaries of the decedent's will to remove the independent executrix of the decedent's estate. *Id.* at 682–83. The trial court signed an order removing the independent executrix under section 222. *Id.* at 683–85.

To determine whether the trial court applied the proper legal grounds for removal of the independent executrix, the court had to decide whether section 149C, section 222, or both provided the proper grounds for removal. *Id.* The court noted that application of the Probate Code to independent administrations is limited, and that due deference is allowed in order to free independent executors from judicial supervision and to distribute estates with a minimum of cost and delay. *Id.* at 683. The court stated that when an estate is represented by an independent executor, further action should not be pursued in court except where the Probate Code specifically and explicitly provides for some court action. *Id.* (citing Tex. Prob.Code Ann. § 145(h) (Vernon 1980)).

Section 222 allows a court to remove "any personal representative" for the causes listed under that section. *Baker,* 789 S.W.2d at 683–84. The *Baker* court analyzed the definition of the term "personal representative" found in section 3(aa) and held that "[section] 222 does not apply to the settlement of an estate which is being handled by an independent executor unless the code explicitly provides for some action in the court." *Id.* at 685.

The results in *Bell* and *Baker* parallel and support our holding in this case. Here, as in *Bell* and *Baker,* we confront a generally applicable section of the Probate Code that uses the term "personal representative" without making explicit mention of independent executors. The estate at issue here had been administered independent of judicial supervision for some time by an independent executor named in the decedent's will, just as in *Bell* and *Baker.*

Richard seeks to distinguish *Baker* because there already was an independent executor in place in *Baker;* he argues further that the court in *Baker* sought to control an issue with respect to the settlement of an estate. Richard's effort to distinguish *Baker* based on the presence of an independent executor appears to rest on a distinction without a difference. Section 222 parallels section 220(a) because both are found in Chapter VII of the Texas Probate Code, entitled "Executors and Administrators." *See* Tex. Prob.Code Ann. ch. VII (Vernon Supp.2008). Both are located in Part 3 of that Chapter, entitled "Revocation of Letters, Death, Resignation, and Removal," and both deal with subject matter directly related to that topic. *See id.* ch. VII, pt. 3 (Vernon Supp. 2008).[1]

---

1. Additional case law confirms that the plain meaning of "settlement" reaches beyond the narrow confines posited by Richard. *See Lowrance v. Whitfield,* 752 S.W.2d 129, 135 (Tex. App.-Houston [1st Dist.] 1988, writ denied) ("settlement of estate" includes adjustment on payment of debts against estate, sale of decedent's property to pay debts of decedent, setting aside of exempt property to widow and minor children, and distribution of estate to distributees entitled thereto; also held to include execution of mineral lease); *Roy,* 92 Tex. at 355–56, 48 S.W. at 896–97 (adjustment and payment of debts, sale of property, setting aside of exempt property, payment of allowance to widow and children, and distribution of estate are acts performed by executor in "settlement" of estate), *modified by* 92 Tex. 346, 49 S.W. 367. Such a comprehensive concept of "settlement" encompasses appointment of a successor independent executor. *See also Black's Law Dictionary* 1377 (7th ed.1999) (defining "settlement" as the "complete execution of an estate by the executor").

The conclusion that appointment of a successor independent executor is control with respect to settlement of an estate is underscored by Texas Probate Code section 5A(b), which contains a non-exclusive list of actions that are properly heard by statutory probate courts as "appertaining to estates" or "incident to an estate." *Id.* § 5A(b) (Vernon Supp.2008). This list includes "generally all matters relating to the collection, settlement, partition, and distribution of estates of deceased persons." *Id.* The statute also instructs that it is to be "construed in conjunction with and in harmony with Section 145 and all other sections of this Code dealing with independent executors, but shall not be construed so as to increase permissible judicial control over independent executors." *Id.*

An action has been held to be "incident to an estate" when the outcome will have a direct bearing on the assimilation, collection, and distribution of the estate. *Pullen v. Swanson,* 667 S.W.2d 359, 362 (Tex. App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). The appointment of the person who will have legal authority to assimilate, collect, and distribute necessarily bears on "the assimilation, collection, and distribution" of an estate. Therefore, section 5A(b) indicates that the limiting language of section 3(aa) operates to exclude independent executors from the reach of section 220(a) because the appointment of a successor independent executor is an action "incident to an estate" involving control by the probate court with respect to the settlement of the estate.

Because the appointment of Stacy as successor independent executor does, in fact, involve control of the probate court with respect to settlement of an estate, application of section 220(a) here is subject to section 3(aa)'s limiting language. Under that limiting language, section 220(a) does not apply to appointment of a successor independent executor "except as expressly provided by law." Tex. Prob.Code Ann. § 3(aa). No such express provision exists in section 220(a) or elsewhere. It follows that section 220(a)'s citation and notice requirements do not apply to the probate court's appointment of Stacy as successor independent executor. This holding comports with the purpose of section 145 to keep independent executors free of court control unless specifically directed otherwise.

Adopting Richard's construction of section 220(a) and subjecting successor independent executors to its provisions in the absence of express language would conflict with the legislative purpose behind independent administration, and would run counter to more than a century of case law supporting a hands-off approach regarding court intervention in independent administrations. The construction of section 220(a) employed by Stacy and the probate court not only is reasonable, but also comports with the legislative intent of independent administration as illustrated by decades of case law. *See Chapa,* 999 S.W.2d at 835.

Statutes and case law contain other examples of Probate Code sections lacking the required explicit reference to independent executors. *See* Tex. Prob.Code Ann. §§ 294, 295 (Vernon 2003) (no explicit mention of "independent executor;" only applicable to independent executors because section 146 expressly cross-references these sections); *In re Bateman's Estate,* 528 S.W.2d at 89 (application of section 258 to independent executor would constitute unauthorized court interference because statute does not specifically and explicitly provide that it applies to independent administrations); *Bunting,* 430 S.W.2d at 473 (application of sections 309, 310, and 313 of Probate Code to independent executor would be inconsistent with

general purpose of freeing independent executor from court control except where the Code specifically and explicitly provides otherwise). All of these Probate Code sections parallel section 220(a) because they are general provisions of estate administration rather than provisions applicable only to certain kinds of administration. *See* Tex. Prob.Code Ann. ch. VI (Vernon Supp.2008) ("Special Types of Administration").

In contrast, section 233 provides an example of the explicitness required by section 3(aa) to bring an independent executor within the reach of a Probate Code section that applies to a "personal representative." *See id.* § 233 (Vernon 2003). Subsections (a) and (b) of section 233 both use the term "personal representative" without reference to independent executors. *Id.* § 233(a) ("Every personal representative of an estate shall use ordinary diligence ..."); § 233(b) ("Except as provided by Subsection (c) of this section, a personal representative may enter into a contract ..."). Subsection (c), however, states that "a personal representative, including an independent executor or independent administrator, may convey or contract to convey...." *Id.* § 233(c). Section 220(a) contains no comparable language expressly reaching an independent executor. *See id.* § 220(a).

The absence of an express reference to "independent executor" in subsections 233(a) and 233(b) indicates the legislature's intent to exclude successor independent executors from the reach of those subsections. *See Helena Chem. Co.,* 47 S.W.3d at 493; *Cameron,* 618 S.W.2d at 540. Likewise, the absence of an express reference to "independent executor" in section 220(a) indicates an intent to exclude the appointment of a successor independent executor from section 220(a)'s reach under the circumstances presented in this case.

In analyzing section 220(a) under the guiding principles animating independent administration, it appears that Stacy's construction best comports with the statute's unambiguous terms and with the legislative intent behind the Texas Probate Code and independent administration of estates. Therefore, we hold that section 220(a) does not apply to Stacy's appointment as successor independent executor. Because section 220(a) does not apply, the probate court was not required to satisfy section 220(a)'s notice provision in connection with the appointment of Stacy as successor independent executor.

### D. Harmless Error

■ We further conclude that any asserted error by the probate court with regard to lack of citation and notice was harmless. Richard's primary assertion on appeal is that the probate court deprived him of an opportunity to be heard regarding Stacy's suitability to serve as successor independent executor and the need for continued administration of the estate. However, the June 21, 2007 hearing provided Richard ample opportunity to argue and proffer evidence on both issues.

The record from that hearing reflects that Richard presented documentary evidence and testimony from two witnesses, including Stacy, regarding both issues. The record also reflects that Richard extensively questioned Stacy on his suitability and on the need for continued administration, and that Richard had deposed Stacy on the same subject matter a week earlier.

Richard stresses that the statutory guidelines to disqualify a person from appointment as an independent executor differ from the guidelines for removal. *Compare* Tex. Prob.Code Ann. § 78 (Vernon 2003), *with id.* § 149C (Vernon Supp.2008). While this is true, the record reflects that the probate court effectively applied the

standard governing appointment in connection with the June 21 hearing. The probate court's findings of fact refer to Stacy as not "unsuitable" to be named successor independent executor, which is part of the standard for appointment. *See id.* § 78. Because the June 21 hearing met the requirements of fundamental fairness owed to Richard, any asserted error by the probate court in not providing notice and citation in connection with Stacy's appointment as successor independent executor was harmless. *See Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex. 1983) ("fundamental fairness dictates that a party must be given a reasonable opportunity to be heard on the merits of his case; such an opportunity must be granted at a meaningful time and in a meaningful manner").

We overrule Richard's issue regarding applicability of Texas Probate Code section 220(a) to Stacy's appointment as successor independent executor.

## II. Does Evidence Support the Probate Court's Findings Regarding Suitability and Necessity of Continuing Administration?

In the alternative, Richard argues that the probate court abused its discretion because the evidence in this case does not support its findings that (1) Stacy was not unsuitable to be appointed successor independent executor; and (2) there was a continued need for administration of the estate of Seaborn Eastland, Jr.

### A. Evidence Supporting the Probate Court's Finding Regarding Suitability

■ The will of Seaborn Eastland, Jr. named Stacy as successor independent executor of his estate. Richard argues that Stacy is unsuitable because Stacy had a conflict of interest arising from his provision of legal advice to Anne Eastland regarding certain transactions, some of which could have been a breach of Anne

Eastland's fiduciary duty to the beneficiaries of the estate.

■ The authority of a testator to select an independent executor of his or her choosing is recognized by Texas law even if that person has an interest in the estate. *Boyles v. Gresham,* 158 Tex. 158, 161, 309 S.W.2d 50, 53 (1958). No comprehensive standard delineates the attributes rendering someone unsuitable to serve as independent executor, and the probate court has broad discretion in determining whether an individual is "suitable." *See In re Estate of Gaines,* 262 S.W.3d at 56 (citing *Boyles,* 158 Tex. at 163, 309 S.W.2d at 53–54).

Case law provides examples in which a clear conflict of interest on the part of an individual is insufficient by itself to render that individual unsuitable to serve as independent executor of an estate, unless that conflict of interest involves a claim of ownership adverse to the best interests of the estate or the clear intent of the will itself. *See Sammons v. Elder,* 940 S.W.2d 276, 283–84 (Tex.App.-Waco 1997, writ denied) (claim of ownership of estate property as beneficiaries—in direct opposition to claim of another beneficiary—under ambiguous provision of will did not legally incapacitate testatrix's children from performing fiduciary duties as independent executors of estate; holding otherwise would mean "[f]amily members would no longer be able to serve as independent executors and receive property under the will if mere service created a conflict requiring disqualification"); *Boyles,* 158 Tex. at 159, 163, 309 S.W.2d at 51, 53–54 (good-faith assertion of claims against estate and of certain rights for individual and his sons under testator's will did not render named independent executor "unsuitable;" action by named independent executor to claim adversely property which is owned, claimed,

or should be claimed by the estate likely would render one "unsuitable").

Stacy testified to the following to demonstrate his qualifications and suitability to serve as successor independent executor: (1) he was a licensed Texas attorney practicing from 1974 to 2000; (2) he had the responsibility at his law firm to review a draft of Anne Eastland's will; (3) he and his firm represented Anne Eastland as independent executrix of the estate of Seaborn Eastland, Jr.; (4) he was aware that Anne Eastland properly exercised a special power of appointment given to her under his father's will; (5) using his own funds, he opened a bank account in his name as independent executor of his father's estate after being appointed as such, and he paid attorney's fees related to the administration of the estate out of that account; (6) he received personal records of his father from his father's former law firm after his mother's death in January 2005; and (7) he did not have actual knowledge of the actual or potential assets of his father's estate, or of any actual or potential claims against his father's estate, until receipt of his father's personal records.

Richard did not proffer evidence contradicting Stacy's testimony, instead relying on the following testimony from Stacy: (1) during his representation of Anne Eastland as independent executrix of Seaborn Eastland, Jr.'s estate, he knew of and approved certain transactions which may or may not have been self-dealing; and (2) he understood that there were different exculpatory provisions with respect to self-dealing in his mother's and father's wills, which was a factor in his decision to seek judicial construction of both wills. Richard also argues that Stacy is unsuitable because he is using his status as co-independent executor of Anne Eastland's estate to obtain a personal benefit in litigation against Richard in violation of Stacy's fiduciary duty under Anne Eastland's will.

Richard offers no evidence or case law supporting this assertion. Stacy argues that any self-dealing issues raised by Richard were addressed by Stacy's declaratory judgment suit of November 14, 2006.

None of Stacy's testimony indicated a conflict of interest involving ownership claims by him of estate property adverse to the clear pronouncements of the will or to the best interests of the estate. Thus, any asserted conflict arising from his representation of Anne Eastland as independent executrix of his father's estate—or from his asserted approval of certain transactions during that representation—does not establish that the probate court abused its discretion in finding Stacy was not unsuitable to serve as successor independent executor. *See Sammons,* 940 S.W.2d at 283–84 (challenge to construction of ambiguous provision in will to determine rightful ownership of accounts as between independent executors and another beneficiary insufficient to establish unsuitability); *Boyles,* 158 Tex. at 159, 309 S.W.2d at 51 (good-faith assertion of legal claims under will on behalf of independent executor's sons insufficient to establish unsuitability). The probate court's finding that Stacy was not unsuitable to serve as successor independent executor cannot be considered an abuse of discretion under the circumstances of this case. *See In re Estate of Gaines,* 262 S.W.3d at 56–57.

**B. Evidence Supporting the Probate Court's Finding Regarding Necessity of Continuing Administration**

 With regard to the probate court's finding of a need for continued administration of the estate, Stacy initially disputes the applicability of a necessity finding for an independent administration. Even assuming that necessity for continued administration is the applicable standard here, we conclude that the probate court acted within its discretion in conclud-

ing that the standard has been satisfied on this record. The necessity of administration is presumed in every case unless facts are shown that make the case an exception to the general rule. *Davis v. Cayton,* 214 S.W.2d 801, 804 (Tex.Civ.App.-Amarillo 1948, no writ). Courts will take into consideration all of the duties which an administrator is required to perform and all the rights to be secured by an administration. *Id.* at 805. The burden of showing that no administration is necessary is on the complaining party. *King,* 1990 WL 11977, at *3 (citing *Davis,* 214 S.W.2d at 804).

Stacy testified that continuing administration of the estate was required because (1) mineral interests owned by his father previously had been overlooked and never distributed; (2) a lawsuit was filed in March 2007 against his father's former law firm in which Stacy expected the estate to be joined as a party; (3) potential liability existed for the estate based on continued distribution of an income stream, which might be affected by the March 2007 lawsuit; (4) potential liability existed for the estate based upon an indemnification agreement with one of his father's former law partners; and (5) Stacy filed a November 14, 2006 lawsuit seeking construction of his father's will.

Richard offered no controverting testimony. However, he did offer the petition of the March 2007 lawsuit Stacy referenced in his testimony to show that their father's estate had yet to be joined as a party. Richard also proffered a mineral lease for the interests testified to by Stacy that was entered into on April 12, 2007 and signed by Stacy without indication of being done in any capacity on behalf of the estate.

The evidence in this case—particularly in light of the presumption that continued administration is necessary—and the absence of evidence to overcome that presumption justifies the probate court's find-

ing that the estate of Seaborn Eastland, Jr. required continued administration. *See King,* 1990 WL 11977, at *3 (complaining party has burden to overcome presumption that administration is necessary); *Davis,* 214 S.W.2d at 804 (necessity of administration is presumed unless otherwise proven). We cannot say under the facts of this case that the probate court's finding constituted a clear abuse of discretion. *See King,* 1990 WL 11977, at *3.

We overrule Richard's issue regarding whether the probate court abused its discretion in finding that Stacy was not unsuitable to serve as successor independent executor and that continued administration of the estate of Seaborn Eastland, Jr. was necessary.

### Conclusion

The probate court's appointment of Stacy as successor independent executor is affirmed.