Affirmed and Opinion filed April 29, 2010.



 

 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-08-01167-CV



 

Benchmark Engineering
Corporation, Appellant

V.

Sam Houston Race Park, Appellee

 



On Appeal from the 281st
District Court

Harris County, Texas

Trial Court Cause No. 2008-31478



 

OPINION

 








This
appeal involves construction of a statute in which the legislature prescribed
the content of a certificate of merit or affidavit required to pursue a cause
of action for negligence against architects or engineers.  See Tex. Civ.
Prac. & Rem. Code § 150.001 et seq.[1] 
Appellant, Benchmark Engineering Corporation (“Benchmark”), contends the trial court
erred by denying its motion to dismiss for want of jurisdiction because (1)
appellee, Sam Houston Race Park (“the Park”), failed to include the factual
basis for professional-negligence claims in its certificate of merit, and (2)
the certificate of merit is supported by the affidavit of an engineer who is
not qualified to render certain expert opinions.  We affirm.

I.   Background

During the year 2007, the Park developed an outdoor concert
venue within the infield area of its horse-racing facility.  Benchmark was
contracted to provide design and engineering services for the project.  Other
contractors were retained to perform the actual construction. Provisions for
water drainage were contemplated in the design and engineering portion of the
project.  Sometime after the project was completed, the Park became
dissatisfied with the effectiveness of water drainage at the construction site. 


            In May 2008,
the Park sued Benchmark and other entities, alleging breach of contract, breach
of express and implied warranties, negligence, negligent   misrepresentation,
and fraud.  Relevant to this appeal, the Park alleges Benchmark was negligent in
the design and construction of subsurface drainage for the infield.  The Park
attached a certificate of merit to its original petition as required under
section 150.002(a).  See Act of May 12, 2005, 79th Leg., R.S., ch. 189, §
2, 2005 Tex. Gen. Laws 348, 348 (amended 2009); Act of May 18, 2005, 79th Leg.,
R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369,
369–70 (amended 2009). 
The Park’s designated engineer, Ed Ulrich, included the following averments
and opinions in his affidavit:

Benchmark
Engineering was negligent in the design and construction of the subsurface
drainage at Sam Houston Race Park.  Benchmark Engineers failed to make a
detailed and thorough analysis of the subsurface conditions at the venue.  The
current design and construction resulted in site changes holding water and slow
draining . . . .  Also, there was no installation of a subsurface drainage
system which would permit the concert venue area to drain and allow for
concerts to proceed.

In
response, Benchmark filed a motion to dismiss for want of jurisdiction pursuant
to section 150.002(d), alleging numerous defects in the Park’s affidavit and
certificate of merit.  See Act of May 18, 2005, 79th Leg., R.S., ch.
208, § 2, 2005 Tex. Gen. Laws 369, 369–70
(amended 2009)
(providing that failure to satisfy the above requirements “shall result in
dismissal of the complaint against the defendant”).

Following
a hearing, the trial court denied the motion.  Benchmark filed this
interlocutory appeal.  

II.   Issues and Standard of Review

Section 150.002(a)
of the Texas Civil Practice and Remedies Code provides,

In any
action or arbitration proceeding for damages arising out of the provision of
professional services by a licensed or registered professional, the plaintiff
shall be required to file with the complaint an affidavit of a third-party
licensed architect, registered professional land surveyor, or licensed
professional engineer competent to testify, holding the same professional
license as, and practicing in the same area of practice as the defendant, which
affidavit shall set forth specifically at least one negligent act, error, or
omission claimed to exist and the factual basis for each such claim.  The
third-party professional engineer, registered professional land surveyor, or
licensed architect shall be licensed in this state and actively engaged in the
practice of architecture, surveying, or engineering.

Act of May 12, 2005, 79th
Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348 (amended 2009); Act of
May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009).  

Benchmark
contends the Park did not fulfill the requirements in section 150.002(a) for
the following reasons: (1) Ulrich failed to provide the “factual basis” for
each of the Park’s allegations of negligence in the Park’s certificate of
merit; and (2) Ulrich failed to provide evidence that he practiced engineering
related to drainage design.                                

 A trial
court’s order granting or denying a motion to dismiss under chapter 150 of the
Texas Civil Practice and Remedies Code is interlocutory and appealable.  Tex.
Civ. Prac. & Rem. Code Ann. § 150.002(f) (Vernon Supp. 2009) (expressing
same law regarding interlocutory appeals as section 150.002(e) in the version
modified by the 79th Texas Legislature).  We review denial of a defendant’s
motion to dismiss pursuant to section 150.002 under an abuse-of-discretion
standard.  Landreth v. Las Brisas Council of Co-Owners, Inc., 285 S.W.3d
492, 496 (Tex. App.—Corpus Christi 2009, no pet.); Consol. Reinforcement,
L.P. v. Carothers Executive Homes, Ltd., 271 S.W.3d 887, 891 (Tex.
App.—Austin 2008, no pet.); Criterium-Farrell Eng’rs v. Owens,
248 S.W.3d 395, 397 (Tex. App.—Beaumont 2008, no pet.); Palladian Bldg. Co.
v. Nortex Found. Designs, Inc., 165 S.W.3d 430, 433 (Tex. App.—Fort Worth
2005, no pet.).  An abuse of discretion occurs when the trial court acts in an
unreasonable and arbitrary manner or without reference to any guiding rules or
principles.  Palladian, 165 S.W.3d at 433 (citing Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985)).  Merely because a
trial court may decide a matter within its discretion in a different manner
than an appellate court does not demonstrate an abuse of discretion.  Id.  However,
a clear failure by the trial court to analyze or apply the law correctly also
constitutes an abuse of discretion.  Walker v. Packer, 827 S.W.2d 833,
840 (Tex. 1992).

Statutory
construction is a question of law we review de novo.  See Consol.
Reinforcement, 271 S.W.3d at 891 (citing City of San Antonio v. City of
Boerne, 111 S.W.3d 22, 25 (Tex. 2003)).  We construe statutory
language to ascertain and effectuate legislative intent, and we consider the
plain and common meaning of each word in the statute.  Tex. Mut. Ins. Co. v.
Sonic Sys. Int’l, Inc., 214 S.W.3d 469, 476 (Tex. App.—Houston [14th Dist.]
2006, pet. denied).  We also view statutory terms in context and give them full
effect.  Id.  We presume every word of a statute was used for a purpose,
and every word excluded from a statute was excluded for a purpose.  Cameron
v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981); Eastland
v. Eastland, 273 S.W.3d 815, 821 (Tex. App.—Houston [14th Dist.] 2008, no
pet.).  Finally, in determining the plain meaning of a statute, we read the
words in context and construe the language according to the rules of grammar
and common usage.  See Tex. Gov’t Code Ann. § 311.011(a) (Vernon 2005).  

III.   Analysis

A.        “Factual
Basis” for the Park’s Claims

 In support of its first issue, Benchmark directs this court to Criterium‑Farrell
Engineers, 248 S.W.3d 395.  The Beaumont Court of Appeals reviewed a trial
court’s order denying a motion to dismiss pursuant to chapter 150 and addressed
whether the plaintiff=s certificate of merit satisfied section 150.002(a).  Id.
at 396.  Despite the fact that the certificate of merit contained several
specific examples of negligent acts or omissions based upon highly technical
observations, measurements, and analysis, the appellant argued the
certificate was insufficient because the affiant-engineer failed to state that
the defendant was “negligent.”  Id.  at 397–99.  In his affidavit, the
engineer stated the following: “(1) the inspector erred in measuring the first
floor elevation; (2) had the engineer accurately measured the slope, the report
would have concluded that repairs were warranted by CFE’s own reported
standards; (3) CFE omitted an inspection of the residence’s second floor which
should have been performed; and (4) had the second-floor inspection been
performed, a prudent engineer would have discovered the excessive slope.”  Id.
at 400.  The court properly affirmed the trial court’s order denying the motion
to dismiss and explained that “the purpose of the certificate of merit is to
provide a basis for the trial court to conclude that the plaintiff’s claims
have merit.”  Id. at 399.  The court also held that “the certificate of
merit must necessarily address the applicable standard of care and the
defendant’s failure to meet the standard.”  Id. at 400.  Benchmark
argues this holding should be applied in the present case.  Benchmark contends
Ulrich was required to include or explain the standard of care for design and
construction of a water drainage system and describe how Benchmark deviated from
that standard.

Although
we agree with the Beaumont court’s ultimate disposition, we disagree with the
holding on which Benchmark relies.  The legislature has amended chapter 150
three times since it was enacted in 2003 and sought to broaden its application
in each amendment.[2] 
The legislature did not incorporate a “standard of care” requirement for
certificates of merit in any of the amendments.  The plain language of chapter
150 does not impose such a specific requirement.  As indicated above, we follow
the rule of construction that every word excluded from a statute must also be
presumed to have been excluded for a purpose.  Cameron, 618 S.W.2d at
540; Eastland, 273 S.W.3d at 821.  Accordingly, we hold Ulrich’s
affidavit is not insufficient for failure to incorporate or refer to the
“standard of care” when describing the “factual basis” for each claim of
negligence.

In support of its argument that the Park’s expert
failed to provide a “factual basis,” Benchmark asserts, “No mention is made to
what should have been included in ‘a detailed and [thorough] analysis’ of the
subsurface conditions nor what analysis Benchmark did and how Benchmark’s
analysis is deficient.”  Benchmark also complains, “Mr. Ulrich fails to provide
an explanation as to what sampling, testing, measurements, data accumulation
and computations were allegedly required in this situation as compared to what
Benchmark did to make its subsurface analysis.”  Benchmark further asserts,
“[T]here is no mention of the proper standard for the design and construction
of the facilities such as the correct computational methods for drainage design
at this facility, what the design drainage flow rates should [have] been, what
the drainage rate is, what kind of testing or physical investigation should
have been done for a proper engineering approach to the drainage design and
what data should have been used as a basis for a proper drainage design.” 
Finally, in furtherance of its argument that a standard of care must be
included in a certificate of merit, Benchmark complains, “The affidavit does
not state what an appropriate drainage system for the concert area should have
been, the design criteria for such a system, the data which should have been
collected to effectuate a design and the correct engineering analysis which should
have been employed.”

Generally, the theme of Benchmark’s complaint on
appeal is Ulrich’s failure to refer to a standard of care.  For example,
Benchmark complains as follows: (1) “Thus[,] there is no specified standard of
care for an effective analysis of subsurface conditions and certainly no
explanation as to how the acts of Benchmark deviated from the standard of
care”; (2) “Thus, there is no specificity to why the current design is
inadequate by explaining what the drainage rate should have been versus what it
is currently and what about the Benchmark design fails to meet a standard of
care”; and (3) “By not specifying design parameters, the design criteria, the
correct engineering analytical methods or the correct data collection and/or
physical testing and the analysis of same so as to demonstrate what would
constitute a viable engineering approach to the design and analysis, . . . Mr.
Ulrich’s opinion in the alleged certificate of merit fails to establish any
standard of care from which to determine whether the action[s] of Benchmark
were negligent.”

            As stated above,
we respectfully disagree with our sister court in Beaumont and hold that there
is no requirement under section 150.002 for an expert to refer to a standard of
care in the certificate of merit.  See Criterium‑Farrell
Engineers, 248 S.W.3d at 400.[3] 
Accordingly, we reject Benchmark’s standard-of-care arguments.

Next, we address Benchmark’s complaints that certain
portions of Ulrich’s report are ambiguous or conclusory.  Benchmark cites Paradigm
Oil, Inc. v. Retamco Operating, Inc., 242 S.W.3d 67 (Tex. App.—San
Antonio 2007, pet. denied).  However, the San Antonio Court of Appeals
addressed the quality of evidence presented during a hearing on damages
following entry of a post-answer default judgment.  Id. at 73–74.  The
court correctly concluded that conclusory testimony will not support a damages
award and cited several cases for the proposition that an expert opinion must
be more than “ipsi dixit.”  Id. at 74.  The generis of these
cases and other cases cited by Benchmark pertain to whether expert testimony is
competent in summary-judgment proceedings or admissible at trial.  This case
does not present the question of whether Ulrich’s averments and opinions are
competent as evidence.  There is no such requirement within the plain language
of the statute sub judice.  Moreover, we are not persuaded that
Benchmark’s reliance on requirements for the content of expert reports under
the very explicit Texas Medical Liability and Insurance Improvement Act
(“MLIIA”) are analogous.  See Tex. Civ. Prac. & Rem. Code §§
74.351 (Vernon Supp. 2009), 74.401 & 74.402 (Vernon 2005).  In Kettle v.
Baylor Medical Center at Garland, 232 S.W.3d 832, 839–41 (Tex. App.— Dallas
2007, pet. denied), the court concluded that certain portions of an expert
report were conclusory because the expert did not specify the standard of care
for a particular procedure and addressed the conduct of multiple defendant
physicians relative to one standard of care.  Unlike section 74.351 of the
MLIIA, the statute under consideration here does not require the expert to
address standard of care, breach, and causal relationship.  Compare Tex..
Civ. Prac. & Rem. Code § 74.351, with Act of May 12, 2005, 79th
Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348 (amended 2009), and
Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009).

Finally, we acknowledge the requirement in section
150.002(a) that the Park’s engineer must be “competent to testify.”  See Act
of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348
(amended 2009); Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex.
Gen. Laws 369, 369–70 (amended 2009). 
However, the legislature did not include a requirement that statements in a
certificate of merit must be competent as evidence when the affiant provides
the “factual basis” for claims.  See id.

After addressing Benchmark’s concerns about standards
of care and the evidentiary quality of language in a certificate of merit, we now
address Benchmark’s contention that Ulrich failed to satisfy the requirements
of section 150.002(a) because he did not “set forth specifically at least one
negligent act” by Benchmark, along with “the factual basis for . . . such claim.” 
See id.  The Park asserts that Ulrich identified three negligent
acts by Benchmark and supplied the required “factual basis” for each claim.  

            The
legislature did not provide a definition of “factual basis” in chapter 150.  See
Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348,
348 (amended 2009); Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005
Tex. Gen. Laws 369, 369–70 (amended 2009).  Consequently, we
employ the rules of construction set forth above and determine legislative
intent first by application of the “plain meaning” rule.  See In re Am.
Homestar of Lancaster, Inc., 50 S.W.3d 480, 486­–87 (Tex. 2001).  “If the
meaning of the statutory language is unambiguous, we adopt, with few
exceptions, the interpretation supported by the plain meaning of the provision’s
words and terms.”  Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996
S.W.2d 864, 865 (Tex. 1999).  “Further, if a statute is unambiguous, rules of
construction or other extrinsic aids cannot be used to create ambiguity.”  Id.
at 865–66.

The plain
meaning of the word “factual” is “of, relating to, or concerned with facts.”  Webster’s
Third Int’l Dictionary 813 (1993).  The word “fact” is defined as “[a]n actual
or alleged event or circumstance, as distinguished from its legal effect, consequence,
or interpretation . . . .”  Black’s Law Dictionary 628 (8th ed. 2004).  Thus
the plain meaning of the statute requires an affiant to describe the facts
giving rise to the claim.  We determine the sufficiency of Ulrich’s affidavit
with this plain and understandable guide.  

Ulrich
stated that he (a) reviewed plans for construction of paving, grading and
drainage systems for the project prepared by Benchmark, (b) reviewed the Park’s
unit price schedules, GrassPave[4]
information, electrical drawings, architectural site plans and other “typical
details” for such a
project, and (c) discussed the scope of the project with a Park staff member.  He
described three areas of engineering negligence: (1) failure to design an adequate
subsurface drainage system; (2) failure to make a detailed and thorough analysis
of subsurface conditions; and (3) failure to install a subsurface drainage
system.  He observed that (1) the design and construction resulted in the site’s
“holding water and slow draining,” (2) “there was no installation of a
subsurface drainage system which would permit the concert venue area to drain
and allow for concerts to proceed,” and (3) “Benchmark Engineering’s design
does not contain a subsurface drainage system that complies with the customers
[sic] requirements.” 

We agree
with Benchmark that the language employed by Ulrich is, at least, ambiguous. 
However, under these unique facts, the ambiguity is not fatal to the
certificate of merit.  In this case, the trial court was free to decide whether
language in the affidavit referred to negligence in designing and constructing
a drainage system or wholesale failure to design or construct a drainage
system.  In other words, the language allows for two interpretations: (1)
either Benchmark undertook to install a subsurface drainage system but did so
negligently or (2) Benchmark simply did not install a system.  Considering our
standard of review, we hold the trial court did not abuse its discretion if it
concluded Ulrich adequately described the factual basis for the Park’s claims
by stating that Benchmark did not install a subsurface drainage system.  We
agree with the Park that it is difficult to identify or describe a more
“factual basis” if one of its claims is the wholesale failure to design or
construct a subsurface drainage system. 

For all the reasons outlined above, we hold the trial
court could have reasonably concluded the Ulrich affidavit contained a
description of at least one negligent act, error or omission, and the factual
basis for that claim.  See Act of May 12, 2005, 79th Leg., R.S., ch.
189, § 2, 2005 Tex. Gen. Laws 348, 348 (amended 2009); Act of May 18, 2005,
79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009).  Therefore, the trial court did
not abuse its discretion in concluding that the Park’s certificate of merit satisfied
the requirements of section 150.002(a).  See Walker v. Gutierrez, 111
S.W.3d 56, 62 (Tex. 2003).  We overrule Benchmark’s first issue.   

B.        Ulrich’s
Qualifications

            In issue two,
Benchmark complains that Ulrich is not qualified to provide an engineer’s
certificate or expert opinion regarding drainage design. Specifically,
Benchmark contends Ulrich has not demonstrated that he practices in the same area
as Benchmark.[5]
 

Benchmark
argues that the Texas Board of Professional Engineers has recognized water resources
as an engineering sub-specialty which includes drainage as a distinct practice
area within civil engineering.  In support of its argument, Benchmark directs
us to Landreth, the only case addressing this issue to date.  In Landreth,
the Corpus Christi Court of Appeals considered the qualifications of an
affiant-architect under section 150.002(a).  285 S.W.3d at 497–500.  The court
held that an initial affidavit did not fulfill the requirements of section
150.002(a) because the affiant did not state or otherwise demonstrate that he
was practicing in the same area as the defendant.  Id. at 499–500. 
Importantly, the court noted that section 150.002(a) focuses on the defendant’s
area of practice, not on the area of practice relevant to the claim.  Id.
at 499.  We conclude the situation in this case is distinguishable.  Ulrich did
not plainly state that he practices engineering in the same area of practice as
Benchmark; however, Ulrich’s affidavit and resume provided the trial court with
ample information reflecting the fact that he practices in the same area of
construction or “project” engineering as Benchmark.

Benchmark
suggests the legislature requires the affiant to demonstrate that he practices
in the same the area of engineering that pertains to the alleged negligent
act.  That interpretation conflicts with the plain meaning of the language in
the statute.  See Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2,
2005 Tex. Gen. Laws 348, 348 (amended 2009); Act of May 18, 2005, 79th Leg.,
R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369,
369–70 (amended 2009). 
Accordingly, we reject Benchmark’s argument that Ulrich was required to
aver he practices in an engineering sub-specialty identified as “drainage and
drainage design.”  Pursuant to the plain language in section 150.002(a), we
examine Ulrich’s certificate of merit, which includes his affidavit and resume,
and compare his areas of practice with identifiable areas of civil engineering
practiced by Benchmark.  

The Park
contends Ulrich’s affidavit and resume establish the fact that he practices
engineering in one or more of Benchmark’s areas of practice. According to
Ulrich’s resume, he practices in the broad area of project engineering which
includes ground preparation, foundation, and building design. During his
career, he performed engineering work on numerous construction projects,
including the design specifications and detailing associated with those
projects.  Apparently, he has won various engineering awards in connection with
soil preparation and foundation design, including the 1990 ASCE Thomas A.
Middlebrook Award for “Tieback Supported Cuts in Overconsolidated Soils.”  He
is a member of the Earth Retaining Structures Committee of the American Society
of Engineers.  Moreover, he has written and published various engineering
articles pertaining to site preparation and excavation for construction of buildings. 
Ulrich stated that he reviewed “[p]lans for construction of paving, grading and
drainage system for Sam Houston Race Park in Harris County, prepared by
Benchmark Engineering Corp.”  It suffices to note that the project which is the
subject of this suit is or was a construction site, and the contemplated
improvements were to be occupied by persons attending concerts at the Park.  In
fact, the “paving” and “grading” plans described in Ulrich’s affidavit resemble
some of the work identified by Ulrich in his extensive resume. 

Benchmark’s
areas of engineering practice are more difficult to ascertain.[6] 
There is no specific statement regarding Benchmark’s engineering practice areas
either in pleadings or briefing.  However, the trial court is not required to
ignore the obvious: Benchmark provided design and construction engineering for
a construction project which included excavation of soil, and Ulrich’s resume
is rife with proof that he practices in the area of building site excavation
and related construction projects.  Ulrich’s description of plans and
specifications he reviewed, coupled with information in his resume, demonstrate
that he practices in the same area of construction engineering practiced by
Benchmark.   

In any
event, we cannot conclude the trial court’s denial of Benchmark’s motion to
dismiss was unreasonable, arbitrary, or without reference to any guiding rules
or principles.  Therefore, the trial court did not abuse its discretion in
finding Ulrich to be a qualified affiant under section 150.002(a).  See
Walker, 111 S.W.3d at 62.  We overrule Benchmark’s second issue. 

The
trial court’s order denying Benchmark’s motion to dismiss is affirmed.  

                                    

                                                                                                                                                                                                /s/                                Charles
W. Seymore                                                                                                                                    Justice

 

 

Panel consists of Justices Seymore,
Brown, and Sullivan. 

 









[1]
Chapter 150 of the Texas Civil Practice and Remedies Code as modified by the
79th Texas Legislature is the version applicable to the subject certificate of
merit.  See Act of May 12, 2005, 79th Leg., R.S., ch. 189, §§ 1B5, 2005 Tex. Gen. Laws 348,
348 (amended 2009) (current version at Tex. Civ. Prac. & Rem. Code §
150.001 et seq. (Vernon Supp. 2009)); Act of May 18, 2005, 79th Leg., R.S., ch.
208, §§ 2, 4–5, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009) (current version
at Tex. Civ. Prac. & Rem. Code § 150.001 et seq. (Vernon Supp. 2009)).  We
note that the Act of May 12, 2005 and the Act of May 18, 2005 must be read in
conjunction to appreciate the version of chapter 150 as modified by the 79th
Texas Legislature.  For purposes of this opinion, we refer to sections of
chapter 150 as they appeared following the 79th Texas Legislature, unless
otherwise indicated.





[2] H.B. 854 expanded application of chapter 150 to
include registered professional land surveyors.  See Act of May 12,
2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348 (amended
2009).  H.B. 1573 further expanded the scope of chapter 150 to include, among
other matters, (a) allegations of damages brought in arbitration proceedings,
and (b) damages arising out of the rendition of professional services (as
opposed to allegations only of professional negligence).  Act of May 18, 2005,
79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009). 
S.B. 1201 broadened the scope of chapter 150 by (a) including registered
landscape architects, (b) reducing the affiant’s qualification requirement from
“practicing in the same area” as the defendant to “knowledgeable” in the same
area as the defendant, and (c) expanding the affidavit requirement to set forth
“for each theory of recovery for which damages are sought, the negligence, if
any, or other action, error, or omission of the licensed or registered
professional in providing the professional service . . . .”  See Act of
May 29, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1991–92
(codified at Tex. Civ. Prac. & Rem. Code § 150.001 et seq. (Vernon Supp.
2009)).





[3]
See progression of chapter 150 as explained in footnote 2, supra.





[4] The record indicates that GrassPave is an artificial
surface used in the construction of the venue.





[5] The Texas Legislature recently modified the statute,
requiring only that the affiant “is knowledgeable in the area of
practice of the defendant . . . .”  Act of May 29, 2009, 81st Leg., R.S., ch.
789, § 2, 2009 Tex. Gen. Laws 1991, 1992 (codified at Tex. Civ. Prac. &
Rem. Code § 150.002(a) (Vernon Supp. 2009)) (emphasis added).  This modified
requirement was not effective before September 1, 2009.





[6]
We disagree with the Corpus Christi Court of Appeals if it has implicitly
concluded that a certificate of merit is defective if the affiant fails to
identify and discuss all areas of the defendant’s    engineering
practice.  See Landreth, 285 S.W.3d at 500.