ANN CRAWFORD McCLURE, Chief Justice
Texas hornbook law teaches that when a person is killed by the negligence of another, two causes of action are potentially created: a survival claim by the estate of the deceased, and a statutory wrongful death claim for the wife, children, and parents of the deceased.[2] In this case, an order from a statutory probate court authorized Appellant Rene Ordonez, as the dependent administrator, to pursue the survival claim of behalf of the Estate of Jay Clayton Grady. The parties dispute whether the probate court also expressly authorized Ordonez to pursue the wrongful death claims. A district court later permitted the mother of Grady's children to pursue wrongful death claims on their behalf, which were then settled, and resulted in a judgment extinguishing only the children's wrongful death claims.
Ordonez challenges the district court's appointment of the mother to pursue the wrongful death claims, and attempts to unwind the settlement and judgment. For the reasons noted below, we affirm.
FACTUAL SUMMARY
Based on the pleadings before us, Jay Clayton Grady was struck and killed by a truck while he crossed a downtown El Paso Street on July 20, 2010. The truck was driven by William Abraham, and owned by his father, Joseph (Sib) Abraham. Grady's estate and wrongful death beneficiaries claim that William Abraham was intoxicated and was otherwise negligent in causing Grady's death, and that Joseph (Sib) Abraham was negligent in entrusting the vehicle to his son. Conversely, the Abrahams contend that Grady was also intoxicated, not in a cross-walk, and was in a dark part of the street. The truth of any of those matters is not before us, but they set the stage for a struggle over who was authorized to prosecute the wrongful death claims. The following chronology of events comes from the pleadings *659 in the trial court below which are largely uncontested by the parties.
Maria Hernandez initially claimed to be the common law spouse of the decedent, Jay Clayton Grady. She had two children by him: S.C.G. and M.R.G.[3] In August of 2010, she hired attorney Gary Hill to pursue a wrongful death claim on her and the children's behalf. On December 10, 2010, Attorney Hill filed an Application for Determination of Heirship and Application for Letters of Dependent Administration in Probate Court Number One for El Paso County, Texas (Cause No. 2010-01342P).
The probate court appointed an attorney ad litem to identify the heirs of Jay Clayton Grady. On September 8, 2011, the court also entered an order appointing Rene Ordonez as the dependent administrator on behalf of the estate.[4] A month later, on October 11, 2011, the probate court approved an "Order Granting Motion to Approve Retention of Personal Injury Counsel" That order first states that Ordonez "is authorized to retain personal injury counsel to pursue claims on behalf of the Estate." It then further provides that Ordonez is authorized to engage Enrique Chavez and the Chavez Law Firm "pursuant to the terms and conditions" of an attached engagement letter. That engagement letter identified Ordonez as Chavez' client and states that "[t]he Chavez Law Firm agrees to represent you as Dependent Administrator for [Jay Clayton Grady's] estate in your claims of negligence and wrongful death for the death of Jay Clayton Grady." This order was approved by Gary Hill as counsel for Maria Hernandez.
On January 5, 2012, Ordonez through the Chavez firm, filed suit as the "Dependent Administrator for the Estate of Jay Clayton Grady, Deceased & as Next Friend of [S.C.G.], a Minor, and [M.R.G.], a Minor" against William Abraham. The case was docketed in the 205th District Court for El Paso County under cause No. 2012-DCV00257. It asserts wrongful death and survivor claims. Several months later, Ordonez filed an amended petition to add Joseph (Sib) Abraham, Jr. as a defendant under a negligent entrustment theory.[5] On March 20, 2012, the 205th District Court transferred the suit to the 327th District Court due to a conflict.
Meanwhile, in the probate proceeding, a court appointed attorney ad litem filed a report which disclosed that Jay Clayton Grady had in fact been married to Josephine Corrales Grady and that marriage had never been terminated. This revelation necessarily excluded Ms. Hernandez as being Grady's common law spouse. On July 16, 2012, Josephine Corrales Grady, through attorney Albert Biel, filed a wrongful death action against the Abrahams *660 in the probate proceeding. The filing of this action prompted two pleadings in the case pending in the 327th. In one filing, Ordonez urged that the 327th transfer its case to the probate court so that it might be consolidated with Josephina Corrales Grady's suit. Conversely, and relying of a local procedural rule, Joseph (Sib) Abraham filed a motion to have Josephine Corrales Grady's suit transferred to the 327th and consolidated with the case pending there.[6] On December 12, 2012, both the 327th and Probate Court Number One signed an order transferring and consolidating Josephina Corrales Grady's suit into the 327th action. Ordonez then filed a third amended petition in the 327th action, appearing on behalf of all wrongful death beneficiaries, including Josephine Corrales Grady.
The proverbial apple cart was then upset by two events occurring on February 1, 2013. First, attorney Gary Hill filed a separate wrongful death lawsuit styled "Maria Hernandez, as next friend of [S.C.G.], a Minor, and [M.R.G.], a Minor, Plaintiff v. William D. Abraham & Joseph (Sib) Abraham, Jr." The suit was assigned to the 205th District Court.
Also on February 1st, Ordonez filed a motion under the style of the probate proceeding labeled "Motion Confirming Authority of Rene Ordonez to Represent All Statutory Beneficiaries in Wrongful Death Suit." The very same day that the motion was filed, both the judges of the 327th and Probate Court Number One signed an order granting the motion. The order bore the style of both the lawsuit in the 327th and Probate Court Number One. The order recites that: "Rene Ordonez, as dependent administrator for the estate of Jay Clayton Grady, has authority to represent [S.C.G.], a minor; [M.R.G.], a minor; Josephine Grady; and all beneficiaries under section 71.004 of the Texas Civil Practice and Remedies Code." There is no indication that a hearing was set on this motion, and subsequent filings claim the motion and signed order were simultaneously served on some of the parties later that same day.
A flurry of motions soon followed. Joseph (Sib) Abraham filed a motion to transfer and then consolidate the newly filed suit from the 205th into the existing suit in the 327th. William Abraham also filed a motion to "Show Authority" noting that two different attorneys had now appeared for the children in two different suits. He also filed a "Motion to Set Aside Ex-Parte Order" contending that he was never given notice of Ordonez' motion to confirm his authority until it was served on him along with a copy of the signed order approving the motion. Ordonez filed a response to the Motion to Show Authority. His response asked that the 327th to "once again" "confirm that Rene Ordonez is the only person with authority to bring suit in this cause" and to remove Gary Hill from representing the children. He responded to the "Motion to Set Aside Ex-Parte Order" contending that no notice and hearing were necessary, and that because Maria Hernandez' counsel was not complaining of the order, she must therefore agree with it. That later assumption, however, turned out to be wrong.
Just before these motions were to be heard, attorney Chris Antcliff filed an appearance *661 and motion to substitute for Gary Hill and thereafter represent Maria Hernandez, as Next Friend of S.C.G. and M.R.G. The motion asserted that Hernandez, as the mother of S.C.G. and M.R.G., did not want Ordonez pursuing the claim on their behalf, and instead wanted attorney Antcliff to prosecute the claim. The motions were heard on May 10, 2013. The 327th Court granted the substitution, giving Antcliff the right to represent the children. The trial court's rationale is captured by this statement made at the hearing:
THE COURT: Beyond what the attorneys are saying here, my real concern happens to be for Ms. Grady [sic] and her children. It's not about you guys at all. And it seems to me, Mr. Chavez, the fundamental right that most people have is to say, 'I don't want you as a lawyer. I want somebody else.' And I think you would feel that way if you were representing the children and the mom and they wanted you to represent them. I mean, that's a fundamental right.
And the fact that at one point in this proceeding you were going to go ahead and take care of all the survivors, that situation has changed. That Plaintiff has said, 'I want my own lawyer,' and I think she's entitled to that. I don't think you can force it down her throat.
The 327th directed at the hearing that attorney Antcliff would represent the children as wrongful death beneficiaries and Ordonez, through attorney Chavez, would continue to represent the estate in the survival claims, and Josephine Grady in her wrongful death claim. The trial court also consolidated the newly filed action from the 205th District Court into the existing case in the 327th.
Not satisfied with this ruling, Ordonez filed under the style of both cases an "Emergency Motion to Reconsider and Emergency Motion to Transfer and Consolidate to Statutory Probate Court". A letter ruling indicates that a probate master denied that emergency motion following a hearing on July 2, 2013. Undeterred, Ordonez on July 11, 2013, filed a "Motion to Convene with Probate Court Number One Regarding Transfer to Probate Court Number One" The motion also sought the transfer and consolidation of the 327th action into the probate court proceeding. In a hearing a few days later, the 327th court restated its position:
THE COURT: Let me make clear that what I said at the hearing on the motion to show authority was that people are entitled to their own attorney to represent them in a cause of action. Ms. Hernandez has chosen to be represented at this time, at the time of the motion to show authority, by Mr. Chris Antcliff.
The trial court removed any doubt about its earlier oral pronouncements through a July 17, 2013 order on the Motion to Show Authority. That order states that only Maria Hernandez as next friend of M.R.G. and S.C.G. will pursue the children's wrongful death claim and they were represented by attorney Antcliff.
The earlier emergency motion to reconsider had been triggered by a mediation that had been set in the case. At the mediation, Maria Hernandez as next friend of the two children settled the children's wrongful death claims. Because minors were involved, Maria Hernandez and the defendants sought court approval and the 327th appointed a guardian ad litem.[7]
*662 On February 13, 2014, the 327th signed a judgment disposing of the children's wrongful death claims based on the settlement. The judgment incorporates a term of the settlement which provides that both S.C.G. and M.R.G. would assign, transfer, convey, release and discharge (at the Abrahams' option) any rights that they might have to receive an inheritance from their father's estate. Ordonez objected to the settlement on a number of grounds, but not based on the assignment clause. Ordonez also objected to the severance of judgment disposing of S.C.G. and M.R.G.'s claims. Those objections were all overruled and this appeal follows.
ISSUES ON APPEAL
Ordonez raises three issues on appeal. In Issue One, Ordonez contends that the order in the 327th permitting Attorney Antcliff to appear for Maria Hernandez as next friend of S.C.G. and M.R.G. was an improper collateral attack on an earlier order of the probate court. In Issue Two, Ordonez contends that he properly filed suit for S.C.G. and M.R.G.'s, and once he did so, no other suit (or representative for a wrongful death beneficiary) was permitted. Finally, in Issue Three, Ordonez contends that the settlement term which provides for an assignment of S.C.G. and M.R.G.'s interest in the estate is void under public policy. We take each of these in turn, but first take a short diversion to resolve Appellees' Motion to Dismiss the appeal.
Motion to Dismiss Based on Mootness
After this case was briefed and argued to this Court, Appellees filed motions to dismiss based on the resolution of the survival claim. While the wrongful death claims were before this Court, the Estate of Jay Clayton Grady settled the survival claim with the Abrahams for the payment of $400,000 which represented the balance of a liability insurance policy limit. In addition to the estate completely releasing the Abrahams, the release agreement further provides that regardless of our decision, or that of the Texas Supreme Court in this appeal, the Abrahams would be forever released and discharged from any liability for any claim or cause of action. As the release states: "In other words, if the Releasor is recognized to be the proper legal representative of [S.C.G. and M.R.G.] for their wrongful death claims, it is understood and agreed that Releasor has released and discharged their wrongful death claims by his signature below." All Appellees contend that this later settlement, in light of this release language, renders the appeal moot.
An appellate court is prohibited from deciding a moot controversy or rendering an advisory opinion. Nat'l Collegiate Athletic Ass'n v. Jones , 1 S.W.3d 83, 86 (Tex. 1999) ; Camarena v. Tex. Emp't Comm'n , 754 S.W.2d 149, 151 (Tex. 1988). The prohibition stems from the separation of powers doctrine set forth in Article 2, Section 1 of the Texas Constitution. Patterson v. Planned Parenthood of Houston and Southeast Texas, Inc. , 971 S.W.2d 439, 442 (Tex. 1998). A case becomes moot if at any stage there ceases to be an actual controversy between the parties. See Camarena , 754 S.W.2d at 151. We have an obligation to take into account intervening events that may render a lawsuit moot. Heckman v. Williamson Cnty. , 369 S.W.3d 137, 166-67 (Tex. 2012).
Ordonez responds that there are two live issues before us. First, the wrongful death release allows for an assignment to the Abrahams of any interest in the litigation, which thus might make the Abrahams (or their insurance carrier) the beneficiary of any settlement funds flowing through the estate. The trial court specifically approved *663 this term and incorporated it into the judgment below. The appeal seeks to set this provision aside as being fundamentally unfair to S.C.G. and M.R.G. We address this argument later in our opinion.
Second, Ordonez contends that attorney's fees were paid out of the wrongful death settlement and the merits of this appeal implicate which attorney is entitled to those fees. For this later argument, Ordonez relies on Allstate Ins. Co. v. Hallman, 159 S.W.3d 640, 642 (Tex. 2005) in which the court held that a dispute over attorneys' fees in a declaratory-judgment action remains a "live controversy," even if the substance of the case becomes moot during its pendency. Hallman involved an insurance coverage dispute. The insured had been sued for property damage, and the liability insurer, Allstate, provided a defense under a reservation of rights. Id. at 641. At the same time, Allstate commenced a declaratory-judgment action against the insured contesting coverage of the property-damage claim. Id. The trial court granted summary judgment for Allstate and denied both parties their attorneys' fees. Id. at 642. The court of appeals reversed, holding that the claim was covered, and it remanded the attorney's fees issue to the trial court. Id. While the case was before the Texas Supreme Court, the parties announced that the underlying property-damage case had concluded with a jury verdict in the insured's favor and Allstate had disclaimed any intention of seeking to recoup from its insured any costs of defending the underlying case. Id. But because the insured was continuing to claim attorney's fees, the supreme court held that there was still a live issue that kept the case from becoming moot. Id. at 643 ("Hallman's remaining interest in obtaining attorney's fees 'breathes life' into this appeal and prevents it from being moot.").
Our record is different only in that the dispute is not whether a party is entitled to attorney's fees at all, but rather which purported representative's attorney earned the fee and in what amount. The underlying judgment under attack awarded a fee in a set amount, based on a review of the work Maria Hernandez's counsel on the work he performed below. While there are no formal pleadings as between Ordonez and Hernandez seeking a redistribution of attorney's fees, we would have to put on blinders not to recognize this litigation is less about the merits of a wrongful death suit, and more about which attorney got to represent the wrongful death beneficiaries (and thus collect a fee). We conclude that Hallman dictates that all motions to dismiss are denied and we turn to the merits.[8]
The Collateral Attack Claim
As Ordonez originally framed the issue, the 327th's July 17, 2012 order which recognized Hernandez as the next friend of the children, and retention of attorney Antcliff, is a collateral attack on the probate court's October 6, 2011 order which approved the retention of counsel. That October order authorized Ordonez to retain *664 counsel to pursue claims of the estate and approved the employment of the Chavez law firm to prosecute the estate's negligence and wrongful death claims.
Conversely, the Appellees contend the October order does not expressly address who would represent the children in a wrongful death claim. The order approves retention of counsel "to pursue claims on behalf of the Estate." The estate's claims include those damages incurred by Jay Clayton Grady prior to his death, including any conscious pain, suffering, funeral, or medical expenses that may have been incurred. See Russell v. Ingersoll-Rand Co ., 841 S.W.2d 343, 345 (Tex. 1992) ; Bedgood v. Madalin , 600 S.W.2d 773, 775 (Tex. 1980) ; Davis v. Bills , 444 S.W.3d 752, 757 (Tex.App.-El Paso 2014, no pet.). As Appellees point out, a wrongful death cause of action is separate and distinct, and compensates the spouse, children, and parents for their loss sustained from the death of the decedent. TEX.CIV.PRAC. & REM.CODE ANN. § 71.004(a) (West 2008); Landers v. B.F. Goodrich Co. , 369 S.W.2d 33, 35 (Tex. 1963) ("Two separate and distinct causes of action may arise where injuries wrongfully inflicted result in death."); Davis , 444 S.W.3d at 757.
The text of the probate court's October order does not explicitly address the wrongful death claims. Ordonez contends that its incorporation of the engagement letter which makes reference to the estate's wrongful death and negligence claim authorizes him to pursue claims on behalf of the wrongful death beneficiaries. But the introductory paragraph of that letter identifies only Ordonez as the law firm's client. The engagement letter does not identify S.C.G. and M.R.G. as clients, nor Ordonez as next friend of S.C.G. and M.R.G. as its client. The engagement letter limits the representation to the "Litigation" (capitalized in original as if it is a defined term) but never defines what the term includes. There is at best an ambiguity as to the scope of the representation approved by the probate court in the October order.
In his reply brief, Ordonez adds the contention that the 327th's July order also contravenes the probate court's order signed on September 8, 2011. That September order appointed Ordonez as the dependent administrator with all powers permitted under Texas law. Ordonez contends that one of those powers is to file a wrongful death suit on behalf of the statutory beneficiaries if they fail to do so within three months of the decedent's death. TEX.CIV.PRAC. & REM.CODE ANN. § 71.004(c). He then reasons that replacing him as the children's representatives upsets that order as well. Appellees correctly point out that this argument was first advanced in Ordonez' reply brief, and is accordingly not preserved for review. TEX.R.APP.P. 38.3 ; Reyes v. Burrus , 411 S.W.3d 921, 924 (Tex.App.-El Paso 2013, pet. denied) (issue raised for the first time in reply brief was not preserved for appeal); Fox v. City of El Paso , 292 S.W.3d 247, 249 (Tex.App.-El Paso 2009, pet. denied) (same); Few v. Few , 271 S.W.3d 341, 347 (Tex.App.-El Paso 2008, pet. denied) (same); Gray v. Woodville Health Care Ctr. , 225 S.W.3d 613, 620 (Tex.App.-El Paso 2006, pet. denied) (same).
But it seems to us that both earlier probate court orders were mooted, or at least superseded, by later events. The Civil Practices and Remedies Code gave the administrator the obligation to assert wrongful death claims when the statutory beneficiaries have not already filed claims:
If none of the individuals entitled to bring an action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and *665 prosecute the action unless requested not to by all those individuals.
TEX.CIV.PRAC. & REM.CODE ANN. § 71.004(c). Ordonez did so here, filing suit on behalf of some of the beneficiaries (S.C.G. and M.R.G., but not Josephine Grady) on January 5, 2012. That suit was filed more than three months after the date of death, but before any suit had been filed by Maria Hernandez on behalf of Grady's children. So whether the October probate court authorized him to file suit on behalf of the children or not, the statute did.
Moreover, the February 1, 2013 order both affirms and expands on the probate court's October order. Unlike the previous probate court order, the February 1, 2013 order expressly states that Ordonez "has authority to represent [SCG], a minor, [MRG], a minor; Josephine Grady; and all beneficiaries under section 71.004 of the Texas Civil Practice and Remedies Code." It thus expressly mentions the wrongful death beneficiaries by name, and also includes a reference to any unnamed beneficiaries. Because this order goes beyond any of the previous orders, we view it as superseding the probate court's October order and it became the operative order that was later altered and amended by the 327th district court.[9]
Ordonez argues that the 327th has no authority to revise any of the probate court's order touching on his capacity to represent the children, or his selection of counsel. His contention is that while a void order is subject to collateral attack by any court, a voidable order must be corrected by direct attack from the issuing court. See *666 Travelers Ins. Co. v. Joachim , 315 S.W.3d 860, 863 (Tex. 2010) (voidable judgment must be directly attacked); Browning v. Placke , 698 S.W.2d 362, 363 (Tex. 1985) (same). Some authority extends this same rationale to interlocutory orders. Davenport v. E.Tex.Ref.Co. , 127 S.W.2d 312, 316 (Tex.Civ.App.-Texarkana 1939, writ ref'd) (observing that rules against collateral attacks apply to protect interlocutory orders as well as final judgments). Ordonez contends that the probate court's order was merely voidable, and thus it must be attacked in that court if at all.
But none of the authority that Ordonez relies upon addresses the situation where two different courts have concurrent jurisdiction, as does a probate court and a district court for a wrongful death and survivor claim. The probate proceeding here was governed by a version of the now replaced Texas Probate Code which provides that statutory probate courts (such as exist in El Paso County) have exclusive jurisdiction over all probate proceedings. Act of June 19, 2009, 81st Leg., R.S., ch. 1351, Sec. 4F, 2009 TEX.GEN.LAWS 4272, 4278 (amended 2011) (current version at TEX.EST.CODE § 32.005(a) ). A cause of action "related to a probate proceeding" must be brought in the probate court unless it falls with one of the class of cases for which district courts have concurrent jurisdiction. Id. One of those class of those cases includes "personal injury, survival, or wrongful death action[s]." Act of June 19, 2009, 81st Leg., R.S., ch. 1351, Sec. 4H 2009 TEX.GEN.LAWS 4272, 4278 (amended 2011)(current version at Tex.Est.Code § 32.007(1) ).
As a general proposition, "when one court has ... exclusive jurisdiction over a matter, any order or judgment issued by another court pertaining to the same matter is void." Celestine v. Dep't of Family & Protective Servs. , 321 S.W.3d 222, 230 (Tex.App.-Houston [1st Dist.] 2010, no pet.) ; In re Aguilera , 37 S.W.3d 43, 49 (Tex.App.-El Paso 2000, no pet.). But when two courts have concurrent jurisdiction, "the issue is one of dominant jurisdiction." In re Puig , 351 S.W.3d 301, 305 (Tex. 2011). The dominant jurisdiction analytical framework is a bit different.
Parties of course can never confer subject matter jurisdiction on a court that has none. See Dubai Petroleum Co. v. Kazi , 12 S.W.3d 71, 75 (Tex. 2000) ; King v. Deutsche Bank Natl. Trust Co ., 472 S.W.3d 848, 851 (Tex.App.-Houston [1st Dist.] 2015, no pet.). Conversely, when the question is which of two courts has dominant jurisdiction, parties by their conduct can forfeit their right to contest jurisdiction. King , 472 S.W.3d at 853. Appellees make that claim here. They contend that Ordonez affirmatively invoked the assistance of the 327th by asking it to confirm his role as the advocate for the children. He did so by apparently drafting and presenting the "Order Confirming Authority of Rene Ordonez to Represent All Statutory Beneficiaries in Wrongful Death Suit" to the 327th. This order in fact did something more than the previous order of the probate court because it expressly addressed the children and Josephine Grady's claims, thereby enlisting the 327th to expand or modify the probate court's earlier orders. Ordonez did so again, when in response to the Motion to Show Authority, he affirmatively asked the 327th to reaffirm his role as the sole representative of the children.
In this regard, we agree with Appellees. Ordonez's affirmative steps of invoking the 327th's jurisdiction to resolve the representation issue estops him from now denying that the 327th could modify prior orders in that regard. We find support for this position in Howell v. Mauzy, 899 S.W.2d 690 (Tex.App.-Austin 1994, writ denied). In that case, a litigant first *667 filed suit in Dallas County. Id. at 695. Several days later, the same litigant filed the same suit in Travis County. Id. While the Travis County suit was pending, the litigant sought a writ of mandamus from the Texas Supreme Court to compel the Travis County district court to hold a hearing in the case, and expressly represented that the Travis County court had obtained exclusive jurisdiction of the cause of action. Id. at 698. When the litigant later claimed the Dallas action was filed first, and thus had dominant jurisdiction, the trial court correctly found the litigant was estopped to assert that claim. Id. ; see also Hiles v. Arnie & Co., P.C., 402 S.W.3d 820 (Tex.App.-Houston [14th Dist.] 2013, pet. denied) (litigants inequitable conduct in agreeing to venue selection clause, avoiding service of process, and delaying in filing plea in abatement estopped dominant jurisdiction argument); Grimes v. Harris, 695 S.W.2d 648, 651-52 (Tex.App.-Dallas 1985, orig. proceeding) (litigants inequitable conduct in playing two courts off of one another estopped them from asserting dominant jurisdiction argument).[10]
Because we find he invited error, if any, in having the 327th participate in the selection of counsel and representation issue, we overrule Issue One.
Must All Wrongful Death Beneficiaries Be Represented Only By the Administrator if the Administrator is the First to File Suit?
Ordonez' second issue claims that once he commenced the wrongful death suit under Section 71.004(c), "the wrongful death beneficiaries may not initiate an independent suit in a different court." As stated, that is neither a startling nor contestable proposition of law. Texas undoubtedly requires that only one suit be filed to address the alleged negligent death of a person. Avila v. St. Luke's Lutheran Hosp. , 948 S.W.2d 841, 850 (Tex.App.-San Antonio 1997, pet. denied) ("The act contemplates that only one suit shall be brought, which shall be for the benefit of all parties entitled to recover."); Christian v. Charter Oak Fire Ins. Co. , 847 S.W.2d 458, 460 (Tex.App.-Tyler 1993, writ denied) ("Our law creates one cause of action in which all spouses, children, and parents may combine to recover their damages." [Emphasis in original.] ). But the 327th remedied any error with multiple suits by consolidating everything into a single proceeding.
The real import of Ordonez' second issue is his claim that once the administrator files the suit, no wrongful death beneficiary can later unseat him as the representative for all wrongful death beneficiaries. For this proposition, Ordonez relies on an unpublished decision from a federal district court. Morin v. Ford Motor Co ., No. 3:07-CV-1700-L, 2009 WL 2486027 (N.D. Tex. Aug. 12, 2009). Factually in Morin , the sister of the decedent, as the independent administrator, filed suit on behalf of all wrongful death beneficiaries in a Dallas federal district court some ten months post death. Id. at *1. Later, the decedent's wife filed a suit, both individually, and as the purported representative of the estate in state court. Id. The state court action was removed and transferred to the Dallas federal district court. The court stayed both actions while Texas and Arizona probate proceedings attempted resolve various estate disputes. An Arizona probate court *668 issued an order refusing to replace the sister as representative and affirmed that she was authorized to assert the wrongful death claims on behalf of all the wrongful death beneficiaries. Id. Unhappy with this ruling, the wife filed a motion in the federal court action to either pursue her own claim with her own counsel, or appear through her own counsel. Id. at *9. The court denied her motion. The court's reasoning, which Ordonez advances here, is that if the wrongful death beneficiaries do not file their own suit in the three month window after the date of death, and the administrator does, then only the administrator can bring the claim on behalf of all the beneficiaries. Id. at *2.
We are not convinced that the plain language of Section 71.004(c) requires this result. It would be a strange rule indeed that forever bars a wrongful death beneficiary from appearing through their own chosen counsel to protect their rights simply because the administrator beat them to the punch in filing the suit. As the Avila case states: "[a]lthough the Act speaks of a single suit, it is intended that the single suit be one where all of the beneficiaries appear as plaintiffs actively presenting their claim, or one in which one or some of the beneficiaries purport to prosecute a claim for the benefit of all entitled under the act." Avila , 948 S.W.2d at 850.
But we need not directly address this issue because the trial court had sufficient facts before it to conclude that a proviso in Section 71.004(c) applied and authorized replacement of the dependent administrator with respect to the wrongful death claims. Section 71.004(c) authorizes the administrator to prosecute the suit "unless requested not to by all those individuals [entitled to bring an action]." Id. Here, by the time of the hearing on the substitution of counsel, the only wrongful death beneficiaries were the children and Josephine Grady. And the trial court had been informed by Josephine Grady's own counsel that she had recently also passed away, leaving only the children as wrongful death beneficiaries. The children, through their mother, objected to the administrator pursuing the claims on their behalf. Accordingly, Section 71.004(c) does not provide a basis for Ordonez to pursue the claims on behalf of the children after they requested he not do so.[11]
Ordonez also contends as a sub-part to this issue that Maria Hernandez, as the mother, lost any right to make decisions about the children's participation in the lawsuit once a guardian ad litem was appointed. In this regard, Ordonez misunderstands the role of a guardian ad litem in tort litigation. The probate court had appointed Karin Carson as guardian ad litem for the children on December 15, 2011. The appointment in this situation was for the purpose of the wrongful death suit. The probate court's order itself states the guardian ad litem was appointed after the court was advised of impending civil litigation. Attorney Carson, and later another guardian ad litem, were similarly appointed by the 327th. As such, we look to the Rules of Civil Procedure to define the role of the guardian ad litem. See Ford Motor Co. v. Garcia , 363 S.W.3d 573, 579 (Tex. 2012) (guardian ad litem's role is defined by situation under which they are appointed;
*669 applying TEX.R.CIV.P. 173 when guardian appointed for settlement of personal injury action).
TEX.R.CIV.P. 173.4 defines and limits the role of a guardian ad litem. Section (a) identifies the ad litem "as an officer and advisor to the court" who under Section (b) is to "advise the court whether a party's next friend or guardian has an interest adverse to the party." Id. at 173.4(a)(b). When a settlement is proposed, the guardian ad litem is also to advise the court "whether the settlement is in the party's best interest." Id. at 173.4(c). Ordonez spends considerable energy attempting to convince us that the various terms of the settlement benefit Maria Hernandez to the detriment of the children, or that she was not acting in the best interest of the children. But the record is bare of any indication that either of the guardians ad litem appointed below had similar concerns. Nor is that issue even before us.
Rule 173.4(d) defines the guardian ad litem's role in litigation to include participation in mediations or proceedings necessary to determine the existence of a conflict, but otherwise limits the role in discovery or trial. Nothing in this rule supports Ordonez' contention that the guardian ad litem trumps a parent's statutory right "to represent the child in legal action and to make other decisions of substantial legal significance concerning the child." TEX.FAM.CODE ANN. § 151.001(7) (West 2014). We overrule Issue Two.
Assignment of Inheritance Rights
Finally, Ordonez complains that the trial court's judgment incorporates a settlement term allowing an assignment of the children's interest in Grady's estate to the Abrahams. The judgment provides:
As part of this settlement, the Court approves, ORDERS and makes part of this Judgment the parties' agreement to assign, transfer, convey or release and discharge (at Defendants' option) any interest that [S.C.G.] and [M.R.G.] have as beneficiaries of the estate of JAY CLAYTON GRADY, specifically including the estate survival claims and causes of action.
By this term, the Abrahams no doubt hoped to minimize their exposure to the survival claim if they stepped into the shoes of the heirs of the estate.
Ordonez does not challenge the established rule in Texas that the heirs, devisees, and legatees of a decedent may validly assign all or any part of their interests in the decedent's estate. Trevino v. Turcotte , 564 S.W.2d 682, 690 (Tex. 1978) (noting established rule but creating limited exception when assignment was taken for purpose of creating standing to challenge will). Rather he recognizes that "[a]s a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." In re Prudential Ins. Co. of Am. , 148 S.W.3d 124, 129 & n.11 (Tex. 2004) (orig. proceeding). Here, Ordonez likens any assignment to a "Mary Carter" agreement which in various contexts has been held void as violating public policy. Elbaor v. Smith , 845 S.W.2d 240, 248, 250 (Tex. 1992) (Mary Carter agreements void as against public policy because they tend to promote litigation and distort the trial against the non-settling defendants); see also International Proteins Corp. v. Ralston-Purina Co. , 744 S.W.2d 932 (Tex. 1988) (tortfeasor cannot settle and take an assignment of a plaintiff's claim against non-settling defendant). Ordonez acknowledges this is "not a pure Mary Carter *670 agreement" but he claims the same evil exists because the tortfeasors are "buying cooperation from key Plaintiffs to minimize the value of the estate's claim."[12]
Appellees respond that the objection was never urged below and is accordingly waived. See Elbaor , 845 S.W.2d at 251 n.23 ("The complaining party on appeal is not relieved of the standard appellate requirements of preservation of error" in challenging Mary Carter agreement); Maryland Insurance Company v. Head Industrial Coatings and Services, Inc. , 906 S.W.2d 218, 237 (Tex.App.-Texarkana 1995), rev'd on other grounds , 938 S.W.2d 27 (Tex. 1996) (finding waiver of "Mary Carter" public policy argument absent objection at trial court). We agree and overrule Issue Three.
CONCLUSION
Having considered all of Ordonez's argument, we overrule Issue One, Two, and Three and affirm the judgment below.
Larsen, J. (Senior Judge), sitting by assignment, not participating
Ferguson, J., sitting by assignment

See e.g. Landers v. B.F. Goodrich Co. , 369 S.W.2d 33, 35 (Tex. 1963) ("Two separate and distinct causes of action may arise where injuries wrongfully inflicted result in death."); Tex.Civ.Prac. & Rem.Code Ann. §§ 71.001 -.011 (West 2008)(Texas Wrongful Death Act); Tex.Civ.Prac. & Rem.Code Ann. § 71.021 (West 2008) (Texas Survivorship Statute).

She also claimed to have third child through him, but that was later disproven by DNA analysis. We choose to identify the children throughout the opinion only by their initials.

"The primary distinction between an independent administration and a dependent administration is the level of judicial supervision over exercise of the executor's power. Executors in a dependent administration and other personal representatives can perform only a limited number of transactions without seeking a court's permission, such as paying taxes, voting stocks, insuring property, and releasing liens upon full payment." Eastland v. Eastland , 273 S.W.3d 815, 821 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Mr. Ordonez is a licensed attorney, and our record does not reflect that he had any prior connection with this family. He would have been presumably compensated on a percentage of the estate assets received and paid out. Tex.Est.Code Ann. § 352.002 (West 2014).

During the pendency of the case below, Sib Abraham passed away and his estate was substituted in as a party.

El Paso County Local Rule 3.02(c), found at http://www.epcounty.com/councilofjudges/epclocalrules.htm, provides: "Whenever any pending case is so related to another case pending in another court, the judge of the court in which the earliest filed case is pending may, upon motion (including the judge's own motion) and notice, transfer the case to the court in which the earlier case is filed to facilitate the orderly and efficient disposition of the litigation."

The probate court had originally appointed attorney Karin Carson as guardian ad litem for the children. The 327th re-appointed attorney Carson in the wrongful death action. Attorney Carson later requested to be replaced, and the 327th appointed a different guardian ad litem who reviewed and recommended approval of the settlement.

Paradoxically, just prior to oral argument, Ordonez filed a motion to dismiss the appeal as to Sib Abraham, who passed away while the case was on appeal. The motion to dismiss noted that Ordonez, while the case was on appeal, had non-suited with prejudice all of his claims against Sib Abraham. In response, Sib Abraham's counsel objected, arguing that as of the time the motion for non-suit was filed, Ordonez was not authorized to non-suit any claims on behalf of the children, and because the non-suit affected the minor's claims, it was required to be, but was never, approved by the court. The subsequent settlement of the survival claim and the release undermine that argument, and we agree and so order that the appeal as to the Estate of Abraham be dismissed.

In response to the Motion to Set Aside Ex-Parte Order, Ordonez contended that the probate court and 327th could have approved the order without the necessity of a hearing, and by implication, without the need for the other parties to have notice of the filing of Ordonez' motion. That issue is not before us, and we need not decide it. But we would be remiss in not noting that our collective judicial eyebrow is raised by the circumstances of this motion and order. The motion, styled only in the probate court proceeding, was filed at 11:53 a.m. on February 1, 2013. The certificate of service reflects some manner of service (not specified) on January 28, 2013, but the subsequent affidavits and delivery receipts show that it was actually hand delivered to some of the parties on February 1, 2013, along with the signed order approving the motion. The order, which has the style of both cases, has a typewritten signature blank specifically naming the Judge of the 327th, and also includes a secondary "approved by" signature blank for the Judge of Probate Court Number One. Both judges signed the same order, which was then filed in both in the District Clerk and County Clerk's offices at 2:28 p.m. and 2:35 p.m. respectively.
While Ordonez claims each court had the authority to reaffirm the prior appointment, this misses the point. How does a motion and order get before two different judges on the same day without some person affirmatively calling the matter to the respective courts' attention (all in the absence of opposing counsel)? An ex parte communication is one that involves fewer than all the parties who are legally entitled to be present during the discussion of any matter. Erskine v. Baker, 22 S.W.3d 537, 539 (Tex.App.-El Paso 2000, pet. denied) ; Tex. Rules Disciplinary P. R. 3.05(b), reprinted in Tex.gov't Code Ann. , tit. 2, subtit. G app. A (West 2013)(a lawyer shall not engage in ex parte communications with the court). The purpose behind prohibiting ex parte communications is to ensure that all legally interested parties are given their full right to be heard under the law. In re Thoma, 873 S.W.2d 477, 496 (Tex.Rev.Trib.1994, on appeal). As we explain above, this order went beyond what the prior order had provided and directly impacted the children and Ms. Grady, who were both represented by counsel at the time. It seems fundamental to us that all the interested parties were entitled to notice that this matter was being presented to the respective courts for consideration before it was acted upon. Whether a hearing was ultimately required or not, at least those parties would have the opportunity to make their positions known on the necessity of a hearing on the motion, if not the motion itself.

These cases are in line with the general principle that a litigant cannot ask something of a court and then complain that the court committed error by giving it to him. N.E.Texas Motor Lines, Inc. v. Hodges , 138 Tex. 280, 158 S.W.2d 487, 488 (Tex.Comm'n App. 1942) (party cannot object to jury charge they requested); Ramirez v. State , 973 S.W.2d 388, 392 (Tex.App.-El Paso 1998, no pet.) (disqualification of counsel issue).

At oral argument, Ordonez claimed the beneficiaries were not without recourse, because they could always go back to the probate court and have the administrator removed or replaced, or the administrator's chosen counsel replaced. But this turns us back to the same question raised in Issue One-which court had the right to make that selection? We have already ruled that Ordonez is estopped to deny that the 327th had the right to decide that question.

This particular argument is mooted by the subsequent settlement of the survival claim for what the parties all apparently agree was the balance of the William Abraham's insurance policy limit.