

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00020-CV

———————————————

IN THE ESTATE OF ERNEST HODGES, DECEASED

On Appeal from Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2007-0003498-2

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

This appeal stems from the partial denial by the probate court of an attorney's fee request by Appellant Scott Moseley. Moseley represented Ernest and Hazel Hodges in certain legal matters while they were alive (the outside litigation). Hazel died first on June 12, 2007. Ernest died shortly thereafter on September 3, 2007. Hazel's will was admitted to probate and an independent executor was appointed. Ernest had a will, but the people designated to serve as executors were deceased or their whereabouts were unknown. So, Ernestine Cohee, Ernest's out-of-wedlock daughter, was appointed dependent administrator of Ernest's estate (the estate). Moseley represented Cohee as administrator.

During Cohee's tenure as administrator, the probate court approved eight fee applications from Moseley requesting payment for his work in the estate administration. By order dated December 22, 2015, the probate court authorized settlement of the outside litigation. The settlement included, among other things, a series of payments over about forty months for the benefit of Hazel's and Ernest's estates, and the order gave Cohee full authority to enter into the settlement and to take all actions reasonably necessary to comply with the settlement's terms. Moseley filed his "Ninth Application for Payment of Attorney's Fees and Costs" (ninth application) on July 25, 2019, after the outside litigation settlement had been fully funded. In his ninth application, Moseley sought payment for two categories of fees and expenses: the first for representation of the estate in its administration from

March 21, 2017, through May 21, 2019 ($4,968.15), and the second for "Additional Expenses of Litigation" arising from the outside litigation ($43,759.36). Cohee approved the application.

Cohee was removed as administrator on August 7, 2019, and Robert Loudermilk was appointed successor administrator on September 9, 2019. Loudermilk, who is the appellee here, filed a written contest of Moseley's ninth application on December 6, 2019. On December 10, 2019, the probate court, by signed order, approved that portion of Moseley's fees and expenses incurred in the estate's administration ($4,968.15) but denied his application as to the remaining fees and expenses that involved work done in the outside litigation, including work done before Ernest's death.

Moseley now appeals that portion of the probate court's order denying his ninth application. We will affirm the probate court's denial of Moseley's fee application as to the fees and expenses incurred prior to Ernest's death. We will reverse that portion of the probate court's order denying Moseley's fee application regarding fees and expenses incurred in representing the estate in the outside litigation after Ernest's death and remand the case to the probate court for further proceedings consistent with this opinion.

I.     **Background**

Prior to Ernest's death, he and Hazel were involved in litigation with Spirit of Prayers Ministry (the Ministry) and Lonnie Woods in Tarrant County Court at Law

No. 2. Ernest died testate on September 3, 2007, at ninety-seven years of age. He had been married three times during his life, and his last wife, Hazel, died on June 12, 2007. Cohee was Ernest's out-of-wedlock daughter who sought appointment as administrator because all other persons named as distributees under the will were predeceased or their whereabouts were unknown. Ernest's will was admitted to probate, and letters of administration with will annexed were issued on February 11, 2008, with Cohee named as dependent administrator.

After Hazel and Ernest died in 2007, the outside litigation expanded into other state court actions, cases in the probate courts in Tarrant County, and federal bankruptcy court proceedings as part of the bankruptcy of the Ministry. The crux of the litigation centered around the claims of the Hodgeses' estates that they were owed over $268,700 by the Ministry arising from a note and a deed of trust held by the Hodgeses that was secured by property owned by the Ministry, plus interest, attorney's fees, and costs. In addition to the claims against the bankruptcy estate by the Hodgeses' estates, there were other claimants, such as taxing authorities, who claimed debts against the property.

A settlement was reached in the bankruptcy litigation on October 30, 2015, between the Trustee for the estate of New Spirit of Prayer Ministries, Inc.[1] (Trustee), New Spirit of Prayer, Inc. (Debtor), and the Estates of Ernest Hodges and Hazel

_____

[1]New Spirit of Prayer Ministries, Inc. is the successor of the Ministry.

4

Hodges. The settlement provided, among other things, for the Debtor to pay $190,000 to the Trustee in specified installments over approximately forty months, and the Trustee would forward those sums to the estates' counsel. In return for the payments, the parties agreed to execute mutual releases. On December 16, 2015, Cohee, through Moseley, filed an "Application for Approval of Settlement" with the probate court asking for approval of the settlement and attached a copy of the settlement agreement to the application. On December 22, 2015, the probate court signed an order authorizing settlement. The order provided that

> IT IS THEREFORE ORDERED that the Settlement Agreement with regards to the above referenced cause of action is approved by the Court, and that Ernestine J. Cohee, as Dependent Administrator, has full authority to enter into the Settlement Agreement, and to take any and all such actions as are reasonably necessary to comply with the terms contained therein.

Although other estate administration events continued in the interim, the next matter pertinent to this appeal occurred on July 25, 2019, when Moseley filed his ninth application. The ninth application reflects that it was "reviewed and approved" and signed by Cohee. The ninth application was not sworn or otherwise made under penalty of perjury, but it was in the form of a statement by Moseley to the probate court. Moseley broke down the ninth application into two parts; the first part was for $4,968.15 for reasonable and necessary attorney's fees and expenses incurred in the administration of the estate between March 21, 2017, and May 21, 2019, and the second part was for "Additional Expenses of Litigation" in the outside litigation

involving the Ministry, which spanned from September 2005 through 2018. The total sought for reasonable and necessary fees and expenses for the outside litigation was $43,759.36, which was one half of the total incurred, the other half being paid by the Estate of Hazel Hodges by its independent executor. Moseley attached ninety-five pages of itemized invoices reflecting his work, his fees, and his expenses—including itemized invoices from attorney Mark French, who served as bankruptcy counsel for the estate.

## II.    No Waiver of Error by Failure to Cite to Appellate Record in Statement of Facts

As an initial matter, we address whether briefing error is present. Loudermilk contends that Moseley waived any error by failing to cite to the appellate record in his brief's statement of facts. *See* Tex. R. App. P. 38.1; *Bolling v. Farmers Branch I.S.D.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.). While Loudermilk is correct regarding the absence of record cites, we note that this is a relatively short record and that we had no difficulty identifying the aspects of the record about which Moseley complains. Loudermilk also contends that Moseley had alleged that Loudermilk had made false statements about certain matters without giving record citations. Moseley's assertions in this regard were specific to certain positions that Loudermilk had taken in the probate court, and their location in the record is readily apparent. Moseley has generally supported his arguments with citations to relevant legal authorities. Therefore, except as to matters specifically addressed below, we overrule

Loudermilk's argument that is phrased as "Objections to Attorney's Statement of Facts, Argument[,] and Authorities, and lack of record references in his brief." *See Robb v. Horizon Cmtys. Improvement Ass'n*, 417 S.W.3d 585, 590 (Tex. App.—El Paso 2013, no pet.) (holding that when the record on appeal was limited in size and the arguments were supported with relevant legal authority, the brief substantially complied with the required form such that a review of the merits was justified).[2]

## III. Standard of Review

Generally, we review a trial court's decision on the award of attorney's fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *Est. of Harris*, No. 02-19-00333-CV, 2021 WL 832721, at *6 (Tex. App.—Fort Worth Mar. 4, 2021, pet. denied) (mem. op.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles, that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004); *Est. of Harris*, No. 02-18-00093-CV, 2018 WL 6215702, at *2 (Tex. App.—Fort Worth Nov. 29, 2018, pet. denied) (mem. op.). A trial court abuses its discretion if it improperly interprets the law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

---

[2]This court's website advises litigants that it does not subscribe to LEXIS and requests that parties cite to Westlaw in their briefing. *See*, www.txcourts.gov/2ndcoa.aspx, Internal Operating Procedures, Briefs & fn 1 (2022). Despite this request, Loudermilk cites to LEXIS, not Westlaw, throughout his brief, requiring this court to cross reference to Westlaw to find the cases cited by him. We encourage all parties to pay attention to the requirements for briefing.

## IV. Analysis

Moseley raises seven issues concerning error by the probate court in denying his ninth application: (1) Cohee was not required to obtain permission to participate in the outside litigation cases, (2) the probate court ratified Cohee's authority to represent the estate in the outside litigation by approving the settlement of the cases; (3) the probate court had previously approved the fees of Mark French as outside bankruptcy counsel for the estate; (4) the probate court had previously approved Cohee's participation in the outside litigation cases through the "Order Granting First Amended Motion to Release Funds and Retain Outside Counsel"; (5) the correctness of the method of presentment of his fees and expenses constitutes an argument of form over substance; (6) Moseley was entitled to recover under the theories of equitable estoppel and unjust enrichment; and (7) the funds collected from the outside litigation settlement, which included monies for attorney's fees and expenses, were not subject to review by the probate court. Each issue is a subset of the main issue—whether the probate court abused its discretion by denying his ninth application. Moseley's issues mirror Loudermilk's objections in the probate court. We will address each of his issues, along with Loudermilk's responses, in our discussion below.

### A. Fees and expenses incurred prior to Ernest's death

For clarity of analysis, we will first analyze Moseley's fifth issue—that presentation of his fees and expenses in the outside litigation should not be barred because he presented his request as an application for approval of fees and expenses

8

incurred in the administration of the estate rather than as a claim against the estate. Loudermilk contends that Mosely should not be allowed to recover his legal expenses and costs incurred in the outside litigation prior to Ernest's death by means of an application for fees and costs incurred as part of the expenses of estate administration. The ninth application reflects that Moseley sought recovery of attorney's fees and expenses incurred in the outside litigation prior to Ernest's death. Such fees and expenses may be recoverable as a claim against the estate but not as expenses of administration of the estate. *See Guardianship of Macer*, 558 S.W.3d 222, 227–28 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding that reimbursement of fees incurred as ward's attorney-in-fact prior to guardianship are recoverable as claims against the guardianship estate if timely submitted and proved as such but not as expenses of the guardianship estate administration); *Guardianship of Fortenberry*, 261 S.W.3d 904, 913 (Tex. App.—Dallas 2008, no pet.); *see also* Tex. Est. Code Ann. §§ 355.001–.003. Therefore, the probate court did not abuse its discretion by denying Moseley's ninth application as to the fees and expenses incurred prior to Ernest's death because they were sought as expenses incurred in the estate administration and not as a claim against the estate. We overrule Moseley's fifth issue as to the outside litigation expenses incurred prior to Ernest's death, but, as discussed below, we sustain it as to the outside litigation expenses incurred after Ernest's death.

9

## B. Fees and expenses in the outside litigation incurred after Ernest's death

The analysis regarding the fees and expenses incurred after Ernest's death is a more complicated issue. Loudermilk opposed Moseley's application for the following reasons: (1) Cohee, as dependent administrator, never obtained permission from the probate court pursuant to Texas Estates Code section 351.051 to pursue the outside litigation (*see* discussion of Moseley's first issue below); (2) Cohee did not seek court permission to hire Moseley to handle the outside litigation (*see* discussion of Moseley's first, second, third, and fourth issues below); (3) the proper method for Moseley to recover these fees and expenses was to file a claim in the estate, not an application for fees and expenses (*see* discussion of Moseley's fifth issue); (4) there is no evidence in the record that supports the award of reasonable and necessary attorney's fees and expenses (*see* discussion of Moseley's fifth and sixth issues below); (5) the record before this court reflects that the probate court authorized the "renewal or extension" of the estate's obligation to Moseley to pay his alleged debt for fees (*see* discussion of Moseley's fifth and sixth issues below); (6) Moseley is not entitled to recovery of his fees under Texas Estates Code Section 352.051 because that section authorizes the personal representative of the estate, not the attorney, to seek reimbursement for reasonable and necessary expenses incurred by the representative (*see* discussion of Moseley's fifth and sixth issues below); (7) Moseley's contention that the doctrines of ratification or estoppel entitle him to his recovery is not enforceable because those

theories are affirmative defenses or matters of avoidance required to be affirmatively pleaded under Rule 94, those defenses were not pleaded, and the record does not establish these matters (*see* discussion of Moseley's fifth and sixth issues below). We will address these matters serially.

### 1. Cohee, as dependent administrator, never sought permission pursuant to Texas Estates Code Section 351.051 from the probate court to pursue the outside litigation.

An "administrator" as well as an "executor" appointed in this state may commence a suit for recovery of personal property, debts, or damages or for title to or possession of land, any right attached to or arising from that land, or an injury or damage done to that land. Tex. Est. Code Ann. § 351.054(a). In this case, the outside litigation involved matters falling within the scope of such authorized litigation. Thus, as to any such matters commenced by Cohee as administrator of the estate, she did not need court authority to do so.

What about continuing prosecution or defending ongoing litigation that began before Ernest's death? As to prosecuting claims that began before the decedent's death, once appointed as administrator, Cohee had authority to continue prosecuting the claims. *Cf. Lorentz v. Dunn*, 171 S.W.3d 854, 856 (Tex. 2005); *Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005). The same is true for continuing to defend suits brought against the decedent prior to death. *Cf. Haven Chapel United Methodist Church v. Leebron*, 496 S.W.3d 893, 912 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Casillas v. Cano*, 79 S.W.3d 587, 591 (Tex. App.—Corpus Christi–Edinburg 2002,

11

no pet.). Thus, Cohee's representation of the estate in the outside litigation did not need court approval. To the extent that the probate court denied recovery of Moseley's fees due to lack of permission to prosecute or defend such actions, we hold that the probate court abused its discretion,[3] and we sustain Moselely's first issue.

### 2. Cohee did not obtain the probate court's permission to hire Moseley to handle the outside litigation.

Loudermilk cites no authority that holds that an administrator who is authorized by law to commence litigation or continue representation of the estate in pending litigation must ask permission of the court to hire a lawyer to represent the estate. We are not persuaded by Loudermilk's argument alone. As noted by the Texarkana Court of Appeals:

> The Texas Estates Code requires the personal representative to "recover possession of the estate and [to] hold the estate in trust to be disposed of in accordance with the law." Tex. Est. Code Ann. § 101.003. Thus, the personal representative is the trustee of the property of the estate. *Humane Soc'y of Austin [& Travis Cnty. v. Austin Nat'l Bank]*, 531 S.W.2d [574,] at 577 [(Tex. 1975)]. Further, it is the personal representative of

---

[3]Loudermilk relies on *Eastland v. Eastland*, 273 S.W.3d 815, 821 (Tex. App.—Houston [14th Dist.] 2008, no pet.), and *Estate of Lambeck*, No. 04-17-00065-CV, 2017 WL 4655020, at *2 (Tex. App.—San Antonio, no pet.) (mem. op.), and Texas Estates Code Section 351.051 for the general proposition that "executors in a dependent administration and other personal representatives can perform only a limited number of transactions without seeking a court's permission, such as paying taxes, voting stocks, insuring property, and releasing liens upon full payment." *Ordonez v. Abraham*, 545 S.W.3d 655, 659 n.4 (Tex. App.—El Paso 2017, no pet.) (quoting *Eastland*, 273 S.W.3d at 821). While such may be true as a general statement, these cases do not hold and the code does not specify that an administrator in a dependent administration does not have the authority to commence or defend existing lawsuits without court approval.

12

the estate that is authorized to hire counsel and to be reimbursed for his services. *See* Tex. Est. Code Ann. § 352.051(2) (personal representative entitled to "reasonable attorney's fees necessarily incurred in connection with the proceedings and management of the estate"); *Huff v. Huff*, 124 S.W.2d 327, 328 (Tex. 1939) (noting under a prior statute that, "an independent executor, or an administrator, is authorized to employ an attorney to represent the estate during the course of administration, and to contract to pay him a reasonable fee" (citing *Callaghan v. Grenet's Est.*, 18 S.W. 507 (Tex. 1886))). As a result, it is the executor or administrator of an estate who retains an attorney to advise him or her in administering the estate that is the real client. *See Messner*, 466 S.W.3d at 206 (holding legal malpractice claim against attorney retained by a prior personal representative of an estate belongs to prior personal representative, not successor personal representative); *see also Huie*, 922 S.W.2d at 925.

*Hodge v. Joyce W. Lindauer Att'y, PLLC*, No. 06-21-00008-CV, 2021 WL 4527902, at *5 (Tex. App.—Texarkana Oct. 5, 2021, no pet.) (footnote omitted) (mem. op.). Thus, we hold that Cohee, the administrator who bore the responsibility to recover and hold the property of the estate, had the right to retain those professionals necessary to assist her in the proper performance of her duties. Therefore, Cohee did not need to obtain authority to hire Moseley to represent the estate in the outside litigation. To the extent that the probate court denied Moseley's ninth application because of Cohee's not having the probate court's prior permission, it abused its discretion.

To the extent that court authority to represent the estate in litigation or to hire a lawyer was required, the record is conclusive as to Cohee's court-approved authority to represent the estate and to hire Moseley as counsel of the estate in the outside litigation. Cohee, through Moseley, filed a detailed request for the probate court to

13

approve the settlement of the outside litigation. In that request, Moseley described the outside litigation in substantial detail and how the litigation benefitted the estate. The probate court approved the settlement and authorized Cohee to do what was necessary to effectuate the conclusion of the outside litigation settlement. *See* Tex. Est. Code Ann. § 351.051(4). The probate court's approval of the settlement cured any defect in authority. *See Catlett v. Catlett*, 630 S.W.2d 478, 483 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.); *see also In re Est. of Arizola*, 401 S.W.3d 664, 673 (Tex. App.—San Antonio 2013, pet. denied); *Arizola v. Tutle & Tutle Trucking, Inc.*, No. 04-11-00067-CV, 2012 WL 2335995, at *3 (Tex. App.—San Antonio June 20, 2012, pet. denied) (mem. op.).[4] To the extent that the probate court held that Moseley was not entitled to his fees and expenses because he was not authorized to represent the estate

---

[4]Although some of these cases use the term "ratification" when speaking of a court's approval of a settlement as "ratifying" the authority of the party making the settlement, this use of the term should not be confused with the affirmative defense or avoidance known as "ratification." As an affirmative defense or avoidance, "[t]here can be no ratification of an act which is not done in behalf of, and does not purport to bind, the person against whom the doctrine of ratification is invoked." *Rhodes, Inc. v. Duncan*, 623 S.W.2d 741, 744 (Tex. App.—Houston [1st Dist.] 1981, no writ). The same is true for equitable estoppel, which requires acts by the party against whom estoppel is sought to be invoked. *Ford Motor Co. v. Motor Vehicle Bd. of Tex. Dep't of Transp./Metro Ford Truck Sales, Inc.*, 21 S.W.3d 744, 758 (Tex. App.—Austin 2000, pet. denied). A ruling by a court is not an act by a party against whom ratification or estoppel is being invoked. Thus, we do not interpret this situation as one requiring an affirmative pleading under Rule 94. Instead, we have chosen to refer to it as a "cure" of any potential defect in authority; the cure was apparent on the face of the record. *See Catlett*, 630 S.W.2d at 483.

in the outside litigation, the probate court abused its discretion,[5] [6] and we sustain

Moseley's corresponding first and second issues.

> ### 3. The proper method for Moseley to recover these fees and expenses was to file a claim in the estate, not an application for fees and expenses.

This argument has been addressed under subsections B.1. and B. 2. above.

> ### 4. Moseley is not entitled to recover his fees under Texas Estates Code section 352.051 because that section authorizes the personal representative of the estate, not the attorney, to seek payment for reasonable and necessary expenses incurred by the representative.

An administrator of an estate has a duty to pay all proper expenses incurred in

the administration of the estate. *El Paso Nat'l Bank v. Leeper*, 538 S.W.2d 803,

807 (Tex. App.—El Paso 1976, writ ref'd n.r.e.). Section 352.051 of the Texas Estates

Code provides that

---

[5]Moseley argues in his third issue that the probate court's order granting Cohee's "First Amended Motion to Release Funds and Retain Outside Counsel" authorized his retention of Mark French as outside counsel. While Moseley did attach a signed order granting this motion as an appendix to his brief, no such order appears in the appellate record. Because we cannot rely on attachments not included in the appellate record, we cannot consider this argument. *See Hall v. Green Ridge Townhouse Homeowners Assoc., Inc.*, 635 S.W.3d 697, 701 (Tex. App.—Texarkana 2021, pet. denied); *Robb*, 417 S.W.3d at 589. We hold that Moseley waived his third issue.

[6]Moseley contends in his sixth issue that he is entitled to recover his fees and expenses under the doctrine of unjust enrichment. While making a bare bones argument on this point, Moseley wholly failed to provide any legal authority to support this argument. We hold that he forfeited his sixth issue. *See Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex. App.—Dallas 1995, writ denied); *Washington v. Bank of NY*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.).

15

On proof satisfactory to the court, a personal representative of an estate is entitled to:

> (1) necessary and reasonable expenses incurred by the representative in:
>
> > (A) preserving, safekeeping, and managing the estate;
> >
> > (B) collecting or attempting to collect claims or debts; and
> >
> > (C) recovering or attempting to recover property to which the estate has a title or claim; and
>
> (2) reasonable attorney's fees necessarily incurred in connection with the proceedings and management of the estate.

Tex. Est. Code Ann. § 352.051. In considering the predecessor statute, Texas Probate Code Section 242, the El Paso Court of Appeals held that expenses incurred by the personal representative of an estate could be recovered by either the personal representative or the person who provided the services to the representative. *See Armstrong v. Stallworth*, 613 S.W.2d 1, 2 (Tex. App.—El Paso 1979, no writ). That court also held that attorney's fees incurred for the estate are expenses of administration of the estate. In light of the language of Section 352.051 and the rationale of *Armstrong*, we conclude that Moseley submitted his claim for attorney's fees and expenses in conjunction with performing services on behalf of the estate and approved by the administrator who hired him to perform the services in a substantially proper manner. To the extent that the probate court held otherwise, we hold that it abused its discretion and we sustain Moseley's fifth issue in this regard.

### 5. There is no evidence in the record that supports the award of reasonable and necessary attorney's fees and expenses.

Loudermilk contends that there is no evidence to support an award of attorney's fees. Acquiring the record on appeal has muddied the process of this appeal. Moseley filed his notice of appeal on January 9, 2020, and filed his docketing statement on January 29, 2020, wherein he stated that "Appellant will request a reporter's record." On February 24, 2020, the court reporter filed a letter with this court advising that she had not received a copy of the notice of appeal by Moseley and that he had not ordered a transcript from her. She asked that Moseley request a transcript and sought an extension of the due date from this court. On March 10, 2020, this court notified all counsel that "[b]ecause appellant failed to pay or make arrangements to pay for the reporter's record, and failed to request a reporter's record, the court will consider and decide those issues or points that do not require a reporter's record for a decision. *See* Tex. R. App. P. 37.3(c)."

After receiving several extensions to file his brief, Moseley did so on June 26, 2020. Despite the court's March 10 notice, Moseley identified the reporter's record in his brief as "RR P1" or "RR P1 L2-3" and made references to the reporter's record in his arguments. Loudermilk filed his brief on October 5, 2020. He argued that there was no reporter's record and that where an appellant failed to present a reporter's record on appeal, the appellate court must presume that the omitted record would support the probate court's judgment. *See Feldman v. Marks*, 960 S.W.2d 613, 614 (Tex.

1996); *London v. London*, 94 S.W.3d 139, 143 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Loudermilk also argued that, in the absence of findings of fact and conclusions of law, the judgment of the probate court implies all necessary findings of fact to support it. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). Loudermilk further argued that there was no evidence in the record to support an award of attorney's fees. However, Loudermilk completely ignored the references in Moseley's brief to a reporter's record. Likewise, Moseley never filed a reply brief to address Loudermilk's arguments arising from the absence of a reporter's record.

By letter dated December 16, 2021, this court outlined this scenario for the parties and requested Moseley to report the following by December 27, 2021: (1) the date on which he had made his request to the court reporter and (2) whether he had requested and received an unofficial transcript or instead attempted to belatedly comply with this court's February 24, 2020 letter and his obligations under Texas Rule of Appellate Procedure 34.6(b). We further advised that if Moseley had timely requested the preparation of an official reporter's record and had designated what portions to include in accordance with Texas Rule Appellate of Procedure 34.6(b)(1), and the court reporter had failed to file the record in accordance with Texas Rule of Appellate Procedure 35.3, then this court would order the court reporter to file the record. In that case, once we received the record, we would allow Moseley the opportunity to amend his brief to correct discrepancies, if any, between the volume and page numbers that he had used in his brief and those in the official reporter's

18

record. We would then allow Loudermilk the opportunity to amend his brief in light of the record and Moseley's amended brief, if any. The court reporter filed her record of the hearing in question on December 27, 2021. That same day, Moseley reported by letter to this court that "[his] office ha[d] previously requested the record from the [c]ourt [r]eporter, and [he was] under the belief that it ha[d] been uploaded to [our] files." Under the court's authority under Texas Rule of Appellate Procedure 35.3.(c), on December 29, 2021, we allowed the reporter's record to be filed and provided supplemental briefing deadlines for the parties. Neither party filed supplemental briefing.

From the reporter's record, we now know that there was no sworn testimony offered on the issues of attorney's fees or expenses at the hearing. Moseley stated to the probate court that

a.      he had filed his ninth application for approval of his fees and expenses;

b.      the fees fell into two categories as set out in the application: fees and expenses in the ordinary administration of the estate and fees and expenses in the outside litigation, collectively totalling $48,734.36;

c.      the fees and expenses incurred, and for which he was seeking recovery, were reasonable and necessary;

d.      the fees incurred in the outside litigation involved representation of the estate/administrator in cases involving the Ministry that the administrator had a fiduciary obligation to defend;

e.      that the prior judge of the probate court had approved the outside litigation settlement;

f.      the prior judge of the probate court had approved hiring Mark French as bankruptcy counsel and distribution of some funds to pay him, but French was

19

still owed monies for his work in the bankruptcy case associated with the Ministry;

g.      the settlement of the outside litigation benefitted the estate through the receipt of substantial sums of money;

h.      his ninth application had been reviewed and approved by the then-current administrator who hired him to do the work; and

i.      the settlement of the outside litigation did not specifically reserve any sum of money to Moseley as fees.

Loudermilk did not object to any of Moseley's unsworn statements to the probate court. Like Moseley, he argued the same objections that he had filed to the ninth application, i.e., that he had no objection to the fees expended in the ordinary estate administration but that Moseley should not be able to recover for fees incurred prior to the death of the decedent, that Moseley had not been approved by the court to represent the estate in the outside litigation, that the administrator had not been authorized to represent the estate in the outside litigation, that the approval by the court of the settlement in the outside litigation did not constitute an approval of Moseley's fees in that litigation, that some of the hourly rates that Moseley had cited in his billing records were higher than what the probate court typically awards, and that there should be testimony on the reasonableness and necessity of Moseley's fees. The probate court asked some questions about whether the outside litigation fees had been included in the annual accountings. After Loudermilk agreed that the fees and expenses sought for the administration of the estate should be awarded, the probate

20

court then awarded those fees and expenses but denied the request for those pertaining to the outside litigation.

We will now address the no-evidence issue. Loudermilk correctly contends that there must be evidence to support the reasonableness and necessity of an award of attorney's fees and that unsworn statements by lawyers do not generally constitute such evidence. *See London*, 94 S.W.3d at 147; *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist. ] 2006, no pet.). However, the analysis does not end there.

The Texas Supreme Court has given clear guidance on how attorney's fees must be established. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496–98 (Tex. 2019). As succinctly summarized by this court,

> *Rohrmoos* clarified that the lodestar method of proof was the "starting point" for an attorney's fee calculation. The elements of the lodestar calculation include "at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." In the Texas Supreme Court's view, the figure yielded by this base lodestar calculation "should approximate the reasonable value of legal services provided in prosecuting or defending the prevailing party's claim through the litigation process."

> A second step in the fee[-]calculation process applies factors outside the lodestar's arithmetical formula, and this step applies what is known in Texas law as the *Arthur Andersen* factors. *Rohrmoos* held that this second step remains viable in the process of determining fees; though after *Rohrmoos*, it appears that the *Arthur Andersen* factors' weight in making a fee calculation is diminished. The impact of the *Arthur Andersen* factors is diminished because many of those factors are subsumed within the lodestar calculation. But the factors retain some sway for a fee claimant to argue that the factors should be considered to enhance the fee claimant's recovery. When, however, "a fee claimant

21

seeks an enhancement [based on the *Arthur Andersen* factors], it must produce specific evidence showing that a higher amount is necessary to achieve a reasonable fee award."

*Ashburn v. Myers*, No. 02-20-00183-CV, 2021 WL 1229969, at *6 (Tex. App.—Fort Worth Apr. 1, 2021, no pet.) (mem. op.) (cleaned up). While statements of counsel are generally required to be under oath to constitute evidence, this requirement may be waived by opposing counsel's failure to object when an objection is necessary. *Id.* at *8 n.5; *see also Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (holding that attorney's unsworn statements attempting to prove up oral settlement agreement were properly considered as some evidence because opposing counsel did not object to statements that were clearly intended as evidentiary in nature); *Anderson v. Safeway Tom Thumb*, No. 02-18-00113-CV, 2019 WL 2223582, at *11–12 (Tex. App.—Fort Worth May 23, 2019, pet. denied) (mem. op.); *Kern v. Spencer*, No. 2-06-199-CV, 2008 WL 2854657, at *3 n.3 (Tex. App.—Fort Worth July 24, 2008, no pet.) (mem. op.). As we noted in *Kern*, after reciting the rule just referenced,

> [t]he evidentiary nature of the hearing on [the] motion for new trial in this case was obvious, particularly given the number of objections to specific statements made by the attorneys present[] and the court's ruling on these objections. The court at one point even granted a running objection. Because none of the parties objected to the lack of oath when each attorney made statements, we treat their statements as evidence.

2008 WL 2854657 at *3 n.3.

In this case, the purpose of the hearing was to have the probate court rule on Moseley's ninth application. As has long been the case, an award of attorney's fees

requires proof of reasonableness and necessity of the attorney's fees and is a question for the trier of fact. *Rohrmoos*, 578 S.W.3d at 489. By its very nature, this hearing was evidentiary in nature. Despite the evidentiary purpose and nature of the hearing, when Moseley addressed the probate court about the total amount of the fees, their reasonableness and necessity, as well as the circumstances under which the work in question had been performed, Loudermilk did not object to Moseley's not being under oath. Under the circumstances, we hold that the necessity of an oath was waived by the failure to object and that Moseley's statements constitute some evidence to support his claim for fees and expenses.

Was Moseley's "evidence" legally sufficient? Under the *Rohrmoos* test, he did not follow the lodestar method of calculation required. He did, however, offer "proof" of the total amount of fees claimed and that the total was reasonable and necessary. Although such proof is not sufficient to justify an award, it is some evidence of the reasonableness and necessity of an award, justifying a remand for further consideration by the trial court. In *Touchstone Communities, Inc. v. Huttinger*, No. 04-20-00432-CV, 2021 WL 2006646, at *2 (Tex. App.—San Antonio May 20, 2021, no pet.) (mem. op.), the court reversed a trial court's order and remanded for an award of attorney's fees in a health-care liability case. In discussing the proof of attorney's fees in the trial previously, the court stated,

> At a hearing preceding the final order, [appellant's] counsel stated without objection that [appellant] had incurred $12,300 in reasonable attorney's fees and briefly listed some of the legal work that had been

done in the case. Although cursory and not conclusive, this was some evidence to place the issue of fees before the court. *See Rohrmoos*[, 578 S.W.3d at] 496–98; *Garcia v. Gomez*, 319 S.W.3d [638,] 642–43 [(Tex. 2010)]; *see also Banda* . . . , 955 S.W.2d [at] 272 . . . (holding [that] counsel's unsworn statements may be considered evidence when opponent fails to object under circumstances in which opponent knows or should know an objection is necessary).

*Id.* Because there was some evidence in the record that supported an award of fees, the San Antonio Court of Appeals held that the proper remedy was to remand for further consideration by the trial court. *See id.* The record before us is essentially the same, and we hold that the same result should apply here. *See id.*

**6.    The record before this court reflects that the probate court authorized the "renewal or extension" of the Estate's obligation to the attorney for his alleged debt for fees.**

The full extent of Loudermilk's argument on this point is that

Section 351.051(a) of the Estate Code expressly provides that "[A] personal representative of an estate may renew or extend any obligation owed by or to the estate on application and order authorizing the renewal or extension." It is undisputed in the record before this [c]ourt that the [p]ersonal [r]epresentative obtained the [p]robate [c]ourt['s] approval authorizing the "renewal or extension" of the [e]state's obligation to pay [Moseley] his alleged debt for attorney's fees.

We hold that this argument is waived due to inadequate briefing. *See Sullivan*, 943 S.W.2d at 477; *Washington*, 362 S.W.3d at 854. We would note, however, that there is no order in the record renewing or extending an attorney's fee obligation to Moseley, only one granting in part and denying in part the ninth application. Thus, nothing in the appellate record supports Loudermilk's bare bones argument on this point.

### 7. Moseley's final argument is unavailing.

Finally, Moseley contends in his seventh issue that a portion of the funds received by the estate were awarded by County Court at Law No. 2 to the estate on his behalf; that such sums now total more than $53,000; and that the probate court had no review authority over the county court's judgment to divest him of those fees, which had been awarded for his benefit. In support of this argument, Moseley attached as tab 4 to his brief a copy of a county-court judgment purporting to award those attorney's fees to the estate on his behalf. However, the appellate record does not contain that judgment, and there is nothing in the appellate record that otherwise reflects this award.

Moseley's argument cannot be considered for two reasons. First, as noted above, documents attached to briefs but not included in the official appellate record cannot be considered by this court. Second, as also noted above, arguments that contain no citations to legal authority may be considered inadequately briefed and may be overruled; we hold that to be the case on this issue.

However, even if we were to consider this argument on the merits, we would overrule it. The official appellate record reflects that the probate court approved the settlement agreement attached to the "Application for Approval of Settlement." That settlement agreement did not purport to be a satisfaction of any particular judgment for any particular element of recovery such as attorney's fees. The settlement was a compromise of multiple claims and counterclaims in multiple lawsuits that were

payable in one total amount to the estate in multiple installments. It was a recovery by the estate and approved for the estate, not a recovery by Moseley for Moseley.

It is the duty of the probate court to oversee the payment of expenses by the administrator on behalf of the estate. Tex. Est. Code Ann. § 352.051; *see also In re Guardianship of Hanker*, No. 01-12-00507-CV, 2013 WL 3233251, at \*5 (Tex. App.—Houston [1st Dist.] June 25, 2013, no pet.) (mem. op.) (holding that probate court has the ultimate responsibility for the protection of an incapacitated person's best interest and that probate court's approval of only reasonable and necessary attorney's fees that guardian incurred is the ultimate safeguard). It is the duty of the probate court to scrutinize the payment of attorney's fees from the funds of an estate to see that they are properly payable from the estate's funds. *Est. of Washington*, 289 S.W.3d 362, 367–68 (Tex. App.—Texarkana 2009, pet. denied). Because the probate court approved the settlement agreement in this case and because the settlement agreement provided that the estate was the recipient of the settlement funds and it did not designate any portion of the funds to Moseley, we hold that the probate court did not abuse its discretion by not paying any specific amount of money to Moseley as attorney's fees awarded by another court. We overrule Moseley's seventh issue.

## V.     Conclusion

We hold that the probate court did not abuse its discretion by denying Moseley's ninth application for attorney's fees and expenses as to fees and expenses incurred prior to Ernest's death. Because these fees and expenses were incurred prior

26

to Ernest's death, they were not properly recoverable as expenses of administration of the estate but potentially recoverable as claims against the estate. Further, we hold that the probate court did abuse its discretion by wholly denying Moseley's ninth application for fees and expenses incurred in his representation of the estate and its administrator in the outside litigation. Because there was some evidence of the total amount of reasonable and necessary attorney's fees and expenses incurred on behalf of the administrator and estate in the outside litigation, we remand this issue to the probate court for further proceedings consistent with this opinion. *See* Tex. R. App. P. 43.2(d); *Touchstone Communities*, 2021 WL 2006646, at *2.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: May 5, 2022

27